UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

ARANDELL CORPORATION, *et al.*,

    Plaintiffs,

vs.

XCEL ENERGY INC., *et al.*,

    Defendants.

CASE NO. 07-C-0076-C

---

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

Plaintiffs Arandell Corporation, Merrick's, Inc., Safety-Kleen Systems, Inc., and Sargento Foods Inc., by their attorneys, respectfully submit this memorandum in support of the plaintiffs' motion to remand this action back to the Circuit Court of Dane County.

The plaintiffs here are all Wisconsin citizens, the only claims they allege in this lawsuit are claims based on Wisconsin law, and their claims involve natural gas purchases made solely in Wisconsin. No federal claims are stated in the complaint and because of this, there is no basis for federal question jurisdiction. Further, there is no basis for federal jurisdiction under the Class Action Fairness Act ("CAFA") because (1) greater than two-thirds of the proposed plaintiff class are Wisconsin citizens, (2) significant relief is sought from a Wisconsin defendant (Northern States Power Company, hereinafter "NSP"), whose alleged conduct forms a significant basis for the claims asserted in this lawsuit; (3) "the principal injury" resulting from the alleged conduct occurred in Wisconsin; and (4) no other class action asserting the "same or similar" factual allegations has been filed.

## BACKGROUND

Arandell Corporation, Merricks, Inc., Safety-Kleen Systems, Inc., and Sargento Foods Inc., are all Wisconsin citizens. (Fischer Aff. Ex. A). On behalf of themselves and all other Wisconsin commercial entities that are similarly situated, they filed their Complaint in the Circuit Court of Dane County, Wisconsin. The plaintiff class has not yet been certified, but federal Energy Information Agency ("EIA") data indicates that there are 163,000 industrial and commercial users[1] of natural gas in Wisconsin. (*Id.* ¶ 2, Ex. B) . The Complaint alleges just two causes of action, the first under Wis. Stat. §133.14, and the second under Wis. Stat. §133.18. (Complaint ¶ 1). Under each of these claims, the plaintiffs allege that, from January 1, 2000 to October 31, 2002 (the "Relevant Time Period"), the defendants were each a member of a conspiracy prohibited by Wis. Stat. § 133.03. (*Id.* ¶¶ 51-53, 57). Specifically, the defendants are sellers of natural gas, and during the Relevant Time Period each of them was part of a conspiracy that sought to restrain trade or commerce relating to natural gas (*Id.*). Because of this conspiracy, the price that purchasers of natural gas paid for natural gas in Wisconsin increased substantially. (*Id.* ¶ 37, 54, 57, 58; *see also* Fischer Aff. Ex. Q). This cost Wisconsin businesses in excess of one hundred millions dollars. (Complaint, ¶37).

Wisconsin's antitrust law that the plaintiffs proceed under here (Wis. Stat. ch. 133 and the cases interpreting Chapter 133) is remarkably different from antitrust law in other states, as well as federal antitrust law. Practically no other state has a "full consideration" statute in any way comparable to Wisconsin's Full Consideration Statute, Wis. Stat. § 133.14.[2] Section

---

[1] As used in the complaint and in EIA statistics, the term "commercial" includes institutional users of natural gas such as schools, colleges, universities, hospitals, churches, municipalities and other government agencies. (Complaint ¶ 1; *see also* EIA's glossary of energy terms available on the Internet at: http://www.eia.doe.gov/glossary/index.html).

[2] Colorado, Kansas and Tennessee are the only other states that have a form of "full consideration" remedy antitrust statutes (*see* Col. Rev. Stat. Ann. § 6-4-121; Kan. Stat. Ann. § 50-115; Tenn. Code Ann. § 47-25-106), but there is virtually no case law interpreting those statutes. In contrast, courts in Wisconsin have interpreted and found constitutional the full consideration remedy provision in Wis. Stat. § 133.14. *See City of Madison v. Hyland Hall & Co.,*

§ 133.14 provides a powerful disincentive to those who would restrain trade or otherwise seek to manipulate markets, which is consistent with the public policy articulated by the legislature regarding Wis. Stat. ch. 133:

> The intent of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition. It is the intent of the legislature to make competition the fundamental economic policy of this state . . . .

Wis. Stat. § 133.01. In enacting chapter 133, the legislature acted to ensure not only a powerful remedy, but also a *speedy* remedy: "*Each civil action under this chapter and each motion or other proceeding in such action shall be expedited in every way and shall be heard at the earliest practicable date.*" Wis. Stat. § 133.18(5) (emphasis added). It is also well settled that Wisconsin law may regulate interstate commerce, and anti-competitive behavior, even if that behavior takes place largely outside of Wisconsin. *See Olstad v. Microsoft Corp.,* 2005 WI 121, ¶ 85, 284 Wis. 2d 224, 700 N.W.2d 139

---

73 Wis. 2d 364, 387, 243 N.W.2d 422 (1976); *Schaeffer v. Bulk Petroleum Corp.,* 569 F. Supp. 621, 630 (E.D. Wis. 1983). The Wisconsin Supreme Court in *City of Madison* said:

> Mere severity of the sanctions in antitrust cases does not make them *per se* excessive or disproportionate in a constitutional sense. What is at stake, in the legislature's judgment, is our system of free enterprise and competition. The constitutionality of the penalty is, therefore, to be measured not by actual damages sustained by a private party, but by the value of the public's interest in enforcing the laws that are designed to preserve our economic system. Accordingly, we conclude the remedy provided by [Wis. Stat. § 133.14] is not on its face unconstitutional.

*Id.* at 387. Likewise, in *Schaeffer,* then District Court Judge Terry Evans was faced with a case in which the defendants argued that unless the court held Wis. Stat. § 133.14 unconstitutional, the plaintiff class could potentially recover $100 million. While that amount in 1983 and at the summary judgment stage struck Judge Evans as "sound[ing] a little ridiculous," -- he refused to accept the defendants' argument:

> It could become clear at trial that the size of the claim is due to the volume of business conducted under illegal contracts. If so, plaintiff should not be thrown out of court because they were harmed excessively, rather than moderately.

*Id.* at 630.

3

(permitting a complaint alleging a Chapter 133 claim to proceed where "the conduct complained of 'substantially affects' the people of Wisconsin and has impact in this state, even if the illegal activity resulting in these impacts occurred predominately or exclusively outside of the state").

The substantial price increase that occurred during the relevant time period in Wisconsin resulted from the manipulative actions of the defendants. (Complaint ¶ 54). For example, one defendant, e prime, Inc. ("e prime"), is (i) a defendant in this case, (ii) a subsidiary of defendant Xcel Energy, Inc. ("Xcel"), and (iii) a sister corporation of defendant Northern States Power Company ("NSP"). During the Relevant Time Period, e prime reported false information about natural gas trades to reporting firms, which used that information to publish indexes of natural gas prices at various locations around the U.S. *See* "Order Instituting Proceedings Pursuant to Sections 6 (c) and 6 (d) of the Commodity Exchange Act, Making Findings and Imposing Sanctions," *In re e prime, Inc.,* Docket No. 04-12, pp. 2-3 (CFTC January 2004) (hereinafter "CFTC Report")(copy attached to Fischer Aff. as Ex. F). The CFTC found that e prime "specifically intended to report false or misleading or knowingly inaccurate market information concerning, among other things, trade prices and volumes of trading in an attempt to manipulate the price of natural gas . . . . " *Id*. p. 4. Based on this finding, the CFTC levied a significant fine ($16 million) on e prime. *Id*. p. 5.

e prime's sister corporation, NSP, is a citizen of Wisconsin. (Complaint ¶ 10; Fischer Aff. Ex. G). NSP was incorporated in Wisconsin in 1901, and its principal place of business is located in Eau Claire, Wisconsin. (*Id.*) Both NSP and e prime are wholly-owned subsidiaries of defendant Xcel. (*Id.* Exs. C & D). Xcel also had a subsidiary

4

during the Relevant Time Period that owned and operated one of the few pipelines that delivers natural gas to the Wisconsin market. (*Id.* Ex. H).

NSP operates in a large geographic area in the Western and Northern part of this state. (*Id.* Ex. J). According to Xcel's website, NSP has somewhere between 90,000 and 100,000 natural gas customers in Wisconsin. (*Id.* ¶ 7 and Ex. K). NSP sold directly to about 10,000 commercial and industrial users during the Relevant Time Period. (*Id.* ¶ 8 and Ex. M). NSP also sold natural gas directly to one of the named plaintiffs in this case (Safety-Kleen Systems, Inc.). (Chuck Trivett Declaration ¶ 2).

## REMAND IS REQUIRED.

### I. UNDER 28 U.S.C. § 1332(d)(4)(A), A FEDERAL COURT MAY NOT EXERCISE JURISDICTION OVER THIS ACTION.

Generally, there is a presumption against removal, and any doubts about removal should be resolved in favor of remand. *See Doe v. Allied-Signal*, 985 F.2d 908 (7th Cir. 1993); *Jeffery v. Cross Country Bank*, 131 F.Supp.2d 1067 (E.D. Wis. 2001). Subject matter jurisdiction is not a matter to be assumed or treated lightly. *Belleville Catering Co. v. Champaign market Place, L.L.C.*, 350 F.3d 691 (7th Cir. 2003) ("inquiring whether the court has jurisdiction is a federal judge's first duty in every case"). There were district court decisions early on after CAFA was enacted that placed the burden of persuasion on the party claiming federal jurisdiction should be exercised, even regarding the exceptions in 28 U.S.C. § 1332(d)(4). *See, e.g. Lao v. Wickes Furniture Co., Inc.,* 455 F. Supp. 2d 1045, 1050-1060 (c.D. Cal. 2006) (superseded by *Serrano v. 180 Connect, Inc.,* 2007 WL 601984 (9th Cir. Feb. 22, 2007.). The Seventh Circuit has recently held that, under 28 U.S.C.A. § 1332(d)(4), "Although we consider the question close," the burden of persuasion is on the party seeking

5

remand.  *Hart v. FedEx Ground Package Systems, Inc.*, 457 F.3d 675, 676 (7th Cir. 2006).

Reliant has sought to remove this case to federal court pursuant to CAFA, but CAFA expressly provides that there are cases that are of such "local" interest that those cases should remain in state court.  In particular, 28 U.S.C. § 1332(d)(4) provides in relevant part:

> A district court shall decline to exercise jurisdiction . . .
>
> (A)(i) over a class in which--
>
> (I)  greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II)  at least 1 defendant is a defendant
>
> (aa)  from whom significant relief is sought by members of the plaintiff class;
>
> (bb)  whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>
> (cc)  who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

In the Notice of Removal, Reliant argues only that there is a dispute relating to the "significant defendant" element (set forth in § 1332(d)(4)(A)(i)(II)(aa) and (bb)), and the no other "similar case" element (set forth in § 1332(d)(4)(A)(ii)).  Based on the allegations in the Complaint and the record before the Court, remand under 28 U.S.C.

6

§ 1332(d)(4) is required because NSP is a "significant defendant" and no "similar case" has been filed.

### A. GREATER THAN TWO-THIRDS OF THE CLASS MEMBERS ARE WISCONSIN CITIZENS.

All of the current plaintiffs are Wisconsin citizens (Fischer Aff. ¶ 1), and they seek to proceed as class representatives for "similarly situated" commercial entities in Wisconsin (Complaint ¶¶ 44-47). Reliant concedes in paragraph 10 of its Notice of Removal that "[t]he members of the class Plaintiffs seek to represent are Wisconsin citizens." Therefore, the first element of 28 U.S.C. § 1332(d)(4)(A) is not at issue.

### B. NSP IS A "SIGNIFICANT" WISCONSIN DEFENDANT.

#### 1. The Plaintiffs Seek "Significant Relief" From NSP.

CAFA does not define the term "significant relief," and no Seventh Circuit or Wisconsin court has addressed the issue. It is well established under Wisconsin law, however, that those who participate in a conspiracy are equally liable for the damages caused by the conspiracy, even if they were not the conspirator that had actually committed what would as an individual act itself be unlawful or tortious. *Lane v. Sharp Packaging Systems, Inc.*, 248 Wis. 2d 380, 392, 635 N.W.2d 896 (Ct. App. 2001). It is also clear that the plaintiffs seek to hold NSP equally liable for the full amount of the damages incurred by the identified class. (*See* Complaint p. 16, ¶ B). As such, this case differs from other CAFA cases in which a conspiracy is not alleged, where the defendants are not joint and severally liable, or where some members of the class were damaged by the conduct of a particular defendant, while some members were not.[3]

---

[3] *See, e.g., Caurso v. Allstate Ins.*, --- F. Supp. 2d. ---, 2007 WL 64162 (E.D. LA., Jan. 8, 2007) (considering a local defendant's market share compared to out-of-state defendants' market share, and how many members of the class

There is also no dispute that the amount of damages the plaintiffs seek to recover in this case is a significant amount. The plaintiffs are entitle to recover under Wisconsin law, and therefore seek in their Complaint, the "full consideration" they paid under contracts that are voided under Wis. Stat. § 133.14 due to the defendants' conspiracy under Wis. Stat. § 133.03.

The plaintiffs are not making a claim against a defendant from which there is no possibility of ever collecting a judgment. NSP is not a "small change" defendant, but is instead a significant one, which in 2006 reported revenues in excess of four billion dollars, with total assets at year's end in excess of nine billion dollars. (Fischer Aff., ¶ 9). NSP is a also a wholly-owned subsidiary of Xcel Energy, Inc., which is the fourth largest combination natural gas and electricity company in the United States (CFTC Order at p. 2, n.2), with 2006 reported revenues of nearly ten billion dollars and with total assets at year's end of nearly twenty-two billion dollars. (Fischer Aff., Ex. O).

### 2. NSP's Alleged Conduct Forms A "Significant Basis" For The Claims Asserted.

Under 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb), it is the local defendant's "*alleged* conduct" that is relevant, and whether that "*alleged* conduct forms a significant basis for the *claims asserted* by the proposed plaintiff class" (emphasis added). The focus of subsection (bb) is therefore expressly on the pleadings, and inferences that can be made on the pleadings, and there is no requirement under subsection (bb) that at this stage the plaintiffs must come forth with actual evidentiary proof of each element of their claims,

---

did business with the local defendant). In *Caruso,* no conspiracy was alleged, and only some of the class members were damaged due to the conduct of the in-state defendant. Nevertheless, the court found that an in-state defendant's 7.5% market share was sufficient to make it a significant defendant under CAFA.

to meet their burden of persuasion under subsection (bb).[4]  This is not the summary judgment stage of the proceedings, after there has been adequate time for discovery to occur.  Wisconsin rules of civil procedure (like the federal rules of civil procedure) require notice pleading, [5] and there in no requirement in the Wisconsin rules of pleading that require conspiracy or antitrust claims to be pled "with particularity."[6]

The Complaint alleges NSP was a member of the conspiracy and that its actions as part of the conspiracy resulted in the plaintiffs paying inflated prices for natural gas, more than they would have if NSP and the other defendants had not conspired to manipulate the price of natural gas.  (Complaint ¶ 54).  NSP's actions directly injured the plaintiffs.  (*Id.* ¶ 58).  NSP directly sells natural gas to commercial entities in Wisconsin, and the class here is comprised of nothing but commercial entities that purchased natural gas in Wisconsin.  (*Id.*).

Based on NSP's conduct alleged in the Complaint, NSP's conduct forms a significant basis for the claims asserted.

Although under subsection (bb) it is not necessary for plaintiffs to make any additional showing, there is further support for the assertion that NSP's alleged conduct forms a "significant basis" for the plaintiffs' asserted claims.  NSP sold natural gas to Safety-Kleen Systems, Inc., one of the named plaintiffs, for use at its La Crosse facility

---

[4] To require such evidentiary detail would be especially unfair in a case such as this where certain facts that may be relevant to the issues here (for instance, the identity of NSP's and e prime's customers in Wisconsin, the level of knowledge NSP and Xcel executives had regarding the price manipulation activities being engaged in by e prime, the amount by which Xcel, NSP and e prime benefited from e prime illegal acts, and whether they have been named as defendants in other class action commenced in the last three years in which **Wisconsin** plaintiffs have sought a remedy for their price manipulation activities) are all facts which are in the possession of the defendants, not the plaintiffs.

[5] *See* Wis. Stat. § 802.02(1) ("a [complaint] shall contain . . . a short and plain statement of the claim"); Wis. Stat. § 802.02(5)(a) ("[e]ach averment of a pleading shall be simple, concise, and direct"); *accord* F.R.C.P. 8(a) and (e)(1).

[6] *Cf.* Wis. Stat. § 802.03 (requiring claims such as fraud to be pled with particularity).

9

during the relevant time period. Trivett Decl. ¶ 2. The actions of the Defendants as a whole have led to the federal government ordering the natural gas industry to pay massive fines for natural gas price manipulation during the Relevant Time Period. (Fischer Aff. Ex. P).

Furthermore, for antitrust purposes the acts of wholly-owned subsidiaries and parent corporations are one and the same: "[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman [Antitrust] Act." *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 427, 405 N.W. 2d 354, 366 (Ct. App. 1987) (*quoting Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S. Ct. 2731, 81 L.Ed.2d 628 (1984)). As is indicated in *Ford Motor:*

> [I]n reality a parent and a wholly owned subsidiary *always* have a "unity of purpose" or a common design. They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests.

*Id.* (emphasis in original). Wisconsin follows this "*Copperweld*" doctrine. *Id.*, 137 Wis. 2d at 429.

Here, defendant Xcel is the parent corporation of NSP and e prime. Under the *Copperweld* doctrine the acts of all three entities are the acts of each other. Therefore, e prime's actions regarding natural gas price manipulation that led to the CFTC ordering it to pay a significant fine (*see* CFTC Order p. 5), are the acts of NSP.

Based on this, NSP's alleged conduct forms a "significant basis" for the conspiracy claims asserted.

Reliant's only argument against this element being satisfied is its conclusory statement that because the "Complaint . . . contains no specific allegations of wrongdoing against [NSP] . . . [i]t therefore appears that [NSP] is not a defendant whose "alleged conduct forms a significant basis for the claims asserted." (Notice of Removal p. 9). The argument strongly suggests that Reliant misunderstands the notice rule of pleading in Wisconsin, and the broad reading that courts are to give pleadings when determining what claims are alleged. As plaintiffs' complaint makes plain, NSP was a full participant in the scheme described in plaintiffs' complaint. As such, it is at least on equal footing with the other defendants, and the relief sought from it is necessarily significant.

This case is different from other cases in which courts have declined to remand a case to state court under CAFA because of no connection between the overwhelming majority of class members and an in-state defendant. Here, plaintiffs allege a conspiracy between all of the defendants. Apparently, this is an issue of first impression regarding 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb). Because a conspiracy is alleged here, it is unnecessary to do a comparison between the alleged conduct of one co-conspirator and the alleged conduct of another co-conspirator, because it is the conspiracy itself, not the individual acts of the conspirators, that caused the harm and for which the defendants will be equally liable. *See, e.g., Lane*, 248 Wis. 2d at 392. Under Wisconsin conspiracy law, the rule is "in for a penny, in for a pound." For example, conspiracy law in Wisconsin "does not confer immunity to a conspirator [merely] because the conspirator did not receive a benefit from the wrongful act or because another conspirator may have played a more dominant or active role in the conspiracy." *Id.* As such, considerations such as

11

how many individual members of the class directly did business with the local defendant in this case—an issue that at least one court has considered in a non-conspiracy CAFA case[7]—are irrelevant in this action.

### C. The "Principal Injury" Occurred In Wisconsin.

There is only one injury identified in the Complaint, and that is that Wisconsin commercial entities paid more *in Wisconsin* for natural gas than they otherwise would have, if the defendants' conspiracy had not occurred. (Complaint ¶ 54). EIA data shows a dramatic increase in natural gas prices for commercial entities in Wisconsin during the Relevant Time Period. (Fischer Aff. Ex. Q). In its Notice of Removal, Reliant also does not argue that the "principal injury" did not occur in Wisconsin. As such, this element of 28 U.S.C. 1332(d)(4) is not in dispute.

### D. No Other Class Action Asserting The Same Or Similar Factual Allegations Has Been Filed.

Reliant points to six other class action cases involving natural gas (see Notice of Removal p. 9). However, none of those cases asserts the same or similar factual allegations as this case.[8] First and foremost, not one of those cases involves ***Wisconsin*** plaintiffs, or seek to recover a remedy for any ***Wisconsin*** plaintiff, or seek to recover based on ***Wisconsin*** state law claims. The first three cases relied on by Reliant—

---

[7] *See, e.g., Caurso v. Allstate Ins.,* --- F. Supp. 2d.---, 2007 WL 64162 (E.D. LA., Jan. 8, 2007) (considering local defendant's market share compared to other defendants' market share).

[8] Plaintiffs are aware of no decision that has directly considered which party has the burden of proof on 28 U.S.C. § 1332(d)(4)(A)(II). Because, however, it is generally not possible to prove a negative, plaintiffs respectfully suggest that the burden of persuasion on the issue of whether there are other class actions that have been filed in the last three years that assert the same or similar factual allegations as this case does, should be on the defendants. *See generally Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005); *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685-6 (9th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 2007 WL 601984*5 (9th Cir. Feb. 22, 2007). *Brill, Abrego* and *Serrano* also stand for the proposition that courts in interpreting CAFA ought not rely upon a Senate Report issued ten days after CAFA had been enacted into law. However, this Senate Report is relied upon by Reliant heavily in its Notice of Removal.

12

*Fairhaven Power Co. v. Encana Corp. et al.,*[9] *Abelman Art Glass v. Encana Corp. et al.*,[10] and *Utility Savings & Refund Services, et al. v. Reliant Energy Services, Inc. et al.*[11] —all concern purchases of natural gas in **California** and assert violations of **California** state law for those California transactions.  None of those California plaintiffs is involved here, none of those California sales is directly at issue, and none of the damages sought here by these Wisconsin plaintiffs is at issue in those cases.  The other three cases Reliant cites—*Leggett, et al. v. Duke Energy, et al.*,[12] *JP Morgan Trust Co. N.A. v. Oneok Inc.*,[13] and *Breckenridge Brewery of Colorado, LLC, et al. v. Oneok, Inc. et al.*[14]—also do not have the same or similar factual allegations to this case.  *Leggett* did not even involve, as the present case does, the purchase of natural gas by direct customers for their own consumption. *Leggett* instead involved *only* indirect customers, and those were wholly in the State of **Tennessee**.  The *JP Morgan* case has no application here because it is not a class action (it is instead a case brought by a liquidating trustee on behalf of the creditors of the bankrupt Farmland Co-op).  Also, the *JP Morgan* case only involves claims under **Kansas** law and relates to **Kansas** purchases, and the *Breckenridge* case only involves claims under **Colorado** law and relates to **Colorado** purchases.  None of the plaintiffs in *Leggett, JP Morgan* or *Breckenridge* is involved here, none of those Tennessee, Kansas or Colorado purchases is at issue or is part of the allegations in this case, and none of the damages sought here by these Wisconsin plaintiffs is at issue in those cases.  As such, the

---

[9] No. 2:05-cv-00243-PMP (PAL) (D. Nev.).

[10] No. 2:05-cv-00437-PMP (LRL) (D. Nev.).

[11] No. 2:05-cv-00110-PMP (LRL) (D. Nev.).

[12] No. 2:05-cv-01021-PMP (PAL) (D. Nev.).

[13] No. 2:05-cv-01331-PMP (PAL) (D. Nev.).

[14] No. 2:06-cv-01351-PMP (PAL) (D. Nev.).

factual allegations in these other cases are **not** the "same or similar" as those in the present case so as to avoid the mandatory CAFA remand provision of 28 U.S.C. § 1332(d)(4).

Reliant's attempt to satisfy the fourth criterion falters for a separate reason. Not only are the present allegations neither the same nor sufficiently similar to the other cases on which defendant relies, but Reliant reads the language in 28 U.S.C. § 1332 (d)(4)(A)(ii) regarding class actions brought "on behalf of the same or other persons" too broadly. Certainly defendants cannot show that claims against any of the defendants have been filed on behalf of the "same" persons—there have been no other class actions filed on behalf of persons in Wisconsin who made purchases of natural gas. But under defendants' statutory reading, "on behalf of the same or other persons" would include *any* other person, including class actions brought by California plaintiffs on behalf of California residents, Tennessee plaintiffs on behalf of Tennessee residents, and indeed *any* other class action brought by *any* unrelated "person." Had Congress intended that broad effect, however, it could easily have wholly omitted the language "on behalf of the same or other persons" from the statute. Reliant's broad reading—that *any* other "similar" class action, regardless by whom brought, is relevant—thus effectively reads the phrase "on behalf of the same or other persons" out of the statute altogether, thereby violating the rule of statutory construction that *all* provisions must be given effect. *See, e.g., Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant. . . ." (quoting 2A N. Singer, *Statutes and Statutory Construction* § 46.06 (rev. 6th ed. 2000)); *see also Bridger Coal Co. Pacific Minerals v. Director, Office of*

14

*Workers' Compensation Programs*, 927 F.2d 1150, 1153 (10th Cir. 1991) ("We will not construe a statute in a way that renders words or phrases meaningless, redundant or superfluous."). Reliant's position has no merit, and would effectually read CAFA as having no bounds, contrary to clear legislative language to the contrary.

Reliant's final argument as to why 28 U.S.C. § 1332(d)(4) does not apply is to claim that the plaintiffs' complaint alleges "a conspiracy of nationwide scope." (Notice of Removal at p. 10.) First, the complaint never alleges a "conspiracy of nationwide scope." (*See* Complaint.) Second, that contention is irrelevant, as the elements set forth in § 1332(d)(4) mention absolutely nothing about conspiracy, nationwide or otherwise. Finally, even if the plaintiffs had alleged in their complaint that some acts in furtherance of the conspiracy, or even all of the acts in furtherance of the conspiracy, took place outside of Wisconsin, that fact would be irrelevant. The elements set forth in 28 U.S.C. § 1332(d)(4) say nothing about whether or not the acts that underlie the claim took place within or without the state. Additionally, the law clearly allows Wisconsin and Wisconsin courts to regulate and sanction out-of-state behavior where that behavior substantially affects the people of Wisconsin and has impacts in this state. *See Olstad v. Microsoft Corp.,* 2005 WI 121, ¶ 85, 284 Wis. 2d 224, 700 N.W.2d 139 (permitting a complaint alleging a Chapter 133 claim to proceed where "the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in these impacts occurred predominately or exclusively outside

15

of the state").[15]  That is exactly what is alleged in the Complaint here, particularly in paragraphs 34-37 of the Complaint.

The present case is not the sort of class action that CAFA intended to make removable to federal court.  It is instead a wholly intra-state action, with a class consisting solely of Wisconsin citizens seeking relief solely under Wisconsin law.  At least one defendant from which significant relief is sought is a Wisconsin citizen (a Wisconsin corporation with its principal place of business in Wisconsin) and the unique Wisconsin claims advanced here are neither the "same" as, nor sufficiently "similar" to, any other class actions to justify federal jurisdiction.

The provisions of CAFA thus require that this Court "shall" decline diversity jurisdiction.  Defendants cannot point to a single class action filed any where at any time that seeks to recover damages on behalf of Wisconsin commercial entities that purchased natural gas in Wisconsin during the Relevant Time Period.  CAFA was never intended to create federal jurisdiction in this type of "one state" case, but only to prevent multiple cases seeking duplicative damages arising out of the same losses.  Jurisdiction is even less appropriate where, as here, the cause of action arose in the same state, and where the entire body of law creating the cause of action and controlling the litigation is the law of that same state.  To retain jurisdiction here undermines substantially plaintiffs' ability and right to choose the forum in which their state claims should be heard, and states' rights in ensuring that claims relating to substantial wrongs to a state's economy are heard in a state forum.  Based on the above, CAFA requires remand.

---

[15] It is noteworthy that in *Olstad,* the Wisconsin Supreme Court also rejects the argument that federal law preempts state law antitrust claims.  *Id,* 284 Wis. 2d 224, ¶ 37.

## II.   THIS CASE DOES NOT PRESENT A FEDERAL QUESTION.

Apparently recognizing the weakness of relying on CAFA, Reliant alternatively claims that subject matter jurisdiction is appropriate under 28 U.S.C. § 1331 and 15 U.S.C. § 717u, arguing that federal law preempts plaintiffs' purely state law claims. (Reliant Notice of Removal at ¶ 19). The courts that have considered this argument have rejected it.

In *In Re California Retail Natural Gas and Electricity Antitrust Litigation*, 170 F. Supp. 2d 1052 (D. Nev. 2001), the court found no such preemption of state antitrust claims for natural gas price manipulation, and stated: "Despite Defendants' claims that federal law preempts Plaintiffs' causes of action, no such complete preemption language appears in any of the three potentially applicable federal acts." *Id*. at 1057. One of the "potentially applicable federal acts" that the court considered and rejected was the Natural Gas Act – the very same act that Reliant argues completely preempts plaintiff's claims here. (*See* Notice of Removal at ¶¶ 20-24).

That same court restated the matter in a more recent opinion: "Because the NGA is not in conflict with state antitrust laws and does not displace state law remedies, the NGA does not preempt these state-law causes of action." *In Re Western States Wholesale Natural Gas Antitrust Litigation*, 346 F. Supp. 2d 1123, 1133 (D. Nev. 2004); *see also In re Western States Wholesale Natural Gas Antitrust Litig.*, 368 F. Supp. 2d 1110, 1117 (D. Nev. 2005) (reaffirming its earlier holding that "in enacting the NGA, Congress did not intend to preempt all state action, including state unfair competition laws, and that the doctrine of

17

complete preemption did not apply," and further stating that the filed rate doctrine "cannot serve as a jurisdictional basis to authorize removal to federal court").[16]

Because plaintiffs here have asserted only state antitrust claims under Chapter 133, those claims are not preempted, and Reliant cannot rely on preemption to support removal jurisdiction.

---

[16] Although this same court in 2005 dismissed certain claims of California residents based on the filed rate doctrine in *In re Western States Wholesale Natural Gas Antitrust Litigation,* 408 F. Supp. 2d 1055 (D. Nev. 2005), that ruling is currently on appeal to the Ninth Circuit, and does not change the court's earlier holdings that neither federal preemption nor the filed rate doctrine can support federal question jurisdiction. Further, the decision in *In re Western States Wholesale* is contrary to decisions reached by other district courts, which have ruled that the filed rate doctrine does not bar claims like the ones brought here. *See E. & J. Gallo Winery v. Encana Energy Services, Inc.*, 2005 WL 2435900 (E.D. Cal.) (also on appeal currently to the Ninth Circuit).

18

## CONCLUSION

For all of the above reasons, and in the interests of justice, the Court should remand this action to the Dane County Circuit Court.

Dated this 12th day of March, 2007

Respectfully submitted,

/s/ Alexander T. Pendleton
ROBERT L. GEGIOS
ALEXANDER T. PENDLETON
WILLIAM E. FISCHER
KOHNER, MANN & KAILAS, S.C.
Washington Building
Barnabas Building Center
4650 N. Port Washington Road
Milwaukee, WI  53212-1059
(414) 962-5110; (414) 962-8725 (FAX)

R. LAWRENCE WARD
JENNIFER GILLE BACON
GREGORY M. BENTZ
PATRICK D. MARTIN
SHUGHART THOMSON & KILROY, P.C.
1700 Twelve Wyandotte Plaza
120 W 12th Street
Kansas City, Missouri  64105-1929
(816) 421-3355; (816) 374-0509 (FAX)

DONALD D. BARRY
BARRY LAW OFFICES, L.L.C.
DONALD D. BARRY CHARTERED
5340 S.W. 17th Street
P. O. Box 4816
Topeka, Kansas 66604
(785) 273-3151; (785) 273-5115 (FAX)

**ATTORNEYS FOR PLAINTIFFS**