# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

ARANDELL CORPORATION, *et al.*,

      Plaintiffs,

v.                                                               CASE NO.: 3:07-CV-00076 (BBC)

XCEL ENERGY, INC., *et al.*,

      Defendants.

---

NEWPAGE WISCONSIN SYSTEM INC.,

      Plaintiff,

v.                                                               CASE NO.: 3:09-CV-00240 (BBC)

CMS ENERGY RESOURCE MANAGEMENT
COMPANY, *et al.*,

      Defendants.

---

## PLAINTIFFS' MOTION TO SET A TRIAL DATE

      The *Arandell* Action began in Wisconsin state court in December 2006, and the *NewPage* Action began in Wisconsin state court in March 2009. Both actions were removed to this Court and transferred to MDL 1566 in the District of Nevada ("MDL Court"). After nearly 13 years of discovery, dozens of dispositive motions Defendants filed *seriatim* over the course of a decade, *Daubert* motions, numerous class settlements, several appeals to the Ninth Circuit and one to the United States Supreme Court, the MDL Court determined that: "the matters should proceed to trial in the

transferor courts. Further delay is inappropriate."[1] The Judicial Panel on Multidistrict Litigation ("JPML") agreed and remanded the Wisconsin Actions to this Court for trial against the four remaining Defendant Groups (seven Defendant Groups settled).

The Wisconsin Plaintiffs respectfully file this Motion, pursuant to Federal Rule of Civil Procedure 1, to set a trial date for the Wisconsin Actions, and a schedule for resolution of the two, discrete pre-trial issues remaining so that, after waiting for nearly 13 years, the Wisconsin Plaintiffs can finally present their case to the jury at trial.

## BACKGROUND

**A.   Industrial and Commercial Wisconsin Purchasers of Natural Gas Brought This Litigation to Pursue Substantial Damages Caused by Defendants' Collusive Manipulation of Natural Gas Prices Between 2000-2002.**

The Wisconsin Actions involve documented and admitted price manipulation in the natural gas industry between 2000-2002. Until the 1970s, the natural gas industry was highly-regulated, and federal and state agencies set prices for natural gas. In 1978, Congress began a series of steps to de-regulate the industry. By the 1990s, industrial and commercial purchasers, who wanted to buy natural gas to run their machines or heat their buildings, could buy gas at rates purportedly determined by market forces. In a consolidated appeal that included these Wisconsin Actions, the

---

[1] MDL Dkt. No. 3105, at 3 (accompanying this Motion as Exhibit 7) (*see also* List of Exhibits at *infra* p. 14).

United States Supreme Court described the problems in the newly-emerging natural gas markets that led to this litigation:

> The free-market system for setting … rates turned out to be less than perfect….[M]any of the customers who bought directly from the pipelines found that they had to rely on privately published price indices to determine appropriate prices for their natural-gas contracts. These indices listed the prices at which natural gas was being sold in different (presumably competitive) markets across the country. The information on which these indices were based was voluntarily reported by natural-gas traders.
>
> In 2003, FERC found that the indices were inaccurate, in part because much of the information that natural-gas traders reported had been false. FERC found that false reporting had involved inflating the volume of trades, omitting trades, and adjusting the price of trades. That is, sometimes those who reported information simply fabricated it. Other times, the information reported reflected "wash trades," *i.e., prearranged* pair[s] of trades of the same good between the same parties, involving no economic risk and no net change in beneficial ownership. FERC concluded that these efforts to manipulate price indices compiled by trade publications had helped raise to extraordinary levels the prices of… direct sales to ultimate consumers.

*Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1597–98 (2015) (internal quotations omitted).[2]

As a result of the natural gas companies' manipulation of prices, Congress held hearings and passed the Energy Policy Act of 2005 to give FERC additional powers to combat price manipulation. *Id.* at 1598. The Defendants in these actions, natural gas companies responsible for the price manipulation, paid more than $340 million in fines to the FERC, CFTC, DOJ and SEC, and several traders served lengthy prison

---

[2] The Supreme Court's opinion accompanies this Motion as Exhibit 3.

3

sentences.[3] However, consumers of natural gas, like the industrial and commercial plaintiffs involved in this litigation, did not receive any compensation for the exorbitantly high prices they paid for natural gas as a result of Defendants' manipulation. To seek recovery under Wisconsin's antitrust laws for the substantial injuries they suffered due to Defendants' price-fixing, the Wisconsin Plaintiffs brought these actions.

The Plaintiffs in these actions (Arandell Corporation, Briggs & Stratton Corporation, Carthage College, ATI Ladish LLC, Merrick's, Inc., Verso Minnesota Wisconsin LLC and Sargento Foods, Inc.) are all well-known and established Wisconsin business and commercial entities.[4] They seek to represent a class of industrial and commercial purchasers of natural gas for consumption in Wisconsin between January 1, 2000, and October 31, 2002 (the "Manipulation Period"). Seven of the original 11 Defendant Groups settled, and only four Defendant Groups remain (CMS, Dynegy, Williams and Xcel[5]) to face trial.

On behalf of the putative class, the consolidated[6] Wisconsin Actions bring two claims for violations of Wisconsin's antitrust laws. Count I[7] alleges violation of Wis. Stat. § 133.14 (the "full consideration claim"), seeking recovery of the almost $2 billion that class members paid to Defendants under contracts or agreements connected with

---

[3] A list of the fines paid by the Defendants here, and the guilty pleas, fines and prison sentences served by the Defendants' officers, managers and traders, is attached to this Motion as Exhibit 2.
[4] The nature of the Plaintiffs' businesses and operations is described in the accompanying Exhibit 1.
[5] *See* Exhibit 1 for a list of all the remaining Defendants in each Defendant Group.
[6] On, June 4, 2010, the MDL Court consolidated the *Arandell* and *NewPage* actions for all purposes, including trial. A copy of the consolidation Order accompanies this Motion as Exhibit 6.
[7] The operative *Arandell* and *NewPage* Complaints accompany this Motion as Exhibits 4 and 5.

Defendants' price-fixing.[8] Count II alleges violation of Wis. Stat. § 133.18 (the "treble damages claim"), and seeks recovery of treble the overcharge caused by Defendants' manipulation. Plaintiffs' experts (whose opinions have survived Defendants' *Daubert* challenges) have documented the substantial damages suffered by class members due to Defendants' price manipulation. (MDL Dkt. No. 2824-4.)

B. **The Wisconsin Plaintiffs Have Reached, and the MDL Court Has Approved, Substantial Class Settlements with Several Defendant Groups.**

Numerous class settlements have been reached and approved in the MDL cases during the past decade, including several class settlements in the Wisconsin Actions. In 2017, the MDL Court granted final approval to a $20.5 million Wisconsin class settlement with four Defendant Groups (AEP, Coral, Duke, Oneok), finding that all the criteria under Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied. (*See, e.g.*, MDL Dkt. Nos. 2902-05.) As a result of the 2017 settlements, millions of dollars in relief was distributed to the Wisconsin settlement class, including substantial (publicly disclosed) distributions to the State of Wisconsin, Milwaukee Public Schools, and Madison Metropolitan School District.

On August 5, 2019, the MDL Court granted final approval to subsequent Wisconsin class settlements with two Defendant Groups (El Paso and CenterPoint), in the amount of $29.25 million. (MDL Dkt. Nos. 3152-3155.) Class members will receive additional millions of dollars in relief from this second round of settlements. Litigation against four Defendant Groups (CMS, Dynegy, Williams and Xcel) continues.

---

[8] *See* U.S. Energy Information Agency, *Independent Statistics & Analysis* (last updated June 28, 2019).

5

**C.   The Wisconsin Actions Have Completed Nearly 13 Years of Exhaustive Pre-Trial Proceedings, and the MDL Court Recommended (and the JPML Ordered) Remand to This Court for Trial Against the Non-Settling Defendants.**

In nearly 13 years of pre-trial proceedings, the parties have taken more than 160 depositions, produced millions of pages of documents and more than 250,000 audio files, and exchanged thousands of pages of written discovery responses, before discovery closed in February 2016. (MDL Dkt. No. 3049, at 4-5.) Between 2007 and 2017, Defendants filed 36 separate *seriatim* dispositive motions in the Wisconsin Actions alone (not counting the dispositive motions that Defendants filed in other MDL actions on a "trial balloon" basis), before the final deadline for dispositive motions expired in January 2017. (*Id.*) Without exception, each dispositive motion on the merits was either denied by the MDL Court or reversed on appeal.[9] In January 2017, the MDL Court decided all *Daubert* motions (holding that the opinions of all four of the Wisconsin Plaintiffs' experts meet the exacting requirements of *Daubert*). (MDL Dkt. No. 2832.)

With discovery complete, *Daubert* and dispositive motions decided, and with all applicable[10] appeals resolved, the MDL Court concluded in January 2019 that:

---

[9] During pre-trial litigation, rulings of the MDL Court were appealed to the Ninth Circuit Court of Appeals six times, and once to the United States Supreme Court. All appeals were resolved in favor of the Plaintiffs.

[10] One appeal is still technically pending in the Ninth Circuit, but it exclusively involves a Defendant with whom the Wisconsin Plaintiffs have settled (CenterPoint). That appeal will soon be concluded, and involves a settled Defendant who is not subject to the JPML's remand Order and will not be involved in trial proceedings in this Court.

"the matters should proceed to trial in the transferor courts. Further delay is inappropriate." (MDL Dkt. No. 3105, at 3.[11]) The JPML agreed, and, in May 2019, it remanded the Wisconsin Actions to this Court for trial against the non-settling Defendants Groups. (JPML Dkt. No. 314, at 1-2.[12])

## ARGUMENT

I. **With Pre-Trial Matters Concluded, the Wisconsin Actions Need to be Tried.**

While the MDL Court left two discrete issues to be decided by this Court (discussed below), these actions are in all other respects ready for trial. The Defendants have done their best to delay matters, spacing out their 36 *seriatim* dispositive motions over the course of a decade to disrupt the completion of pre-trial discovery, and no doubt Defendants will present new reasons why these cases should not be tried now. But there is no good cause for further delay, and the Court should set a trial date. After waiting nearly 13 years for their day in court, the Wisconsin Plaintiffs should not be forced to suffer the additional prejudice of further delay and should finally be allowed to present their case to the jury.

The Wisconsin Plaintiffs respectfully move the Court to set a Scheduling Conference to establish a date for a two-week jury trial of the Wisconsin Actions. *See* Fed. R. Civ. P. 1 (providing that the Federal Rules should be construed, administered and employed "to secure the just, speedy, and inexpensive determination of every action");

---

[11] The MDL Court's Suggestion of Remand Order accompanies this Motion as Exhibit 7.
[12] The JPML's Remand Order accompanies this Motion as Exhibit 8.

7

*see also* Wis. Stat. § 133.18(5) (providing that all civil actions, motions and proceedings under Wisconsin's antitrust laws "shall be expedited in every way and shall be heard at the earliest practicable date.").

## II. This Court Should Set a Schedule to Resolve the Two Discrete Remaining Issues Before Trial.

There are two discrete issues to be addressed by this Court prior to trial.

### 1. Resolving the ministerial NYMEX issue.

The first issue is ministerial (involving conforming the record to the controlling opinions of the Ninth Circuit), but requires some background explanation. In 2003, financial instrument traders who purchased natural gas futures contracts on the New York Mercantile Exchange ("NYMEX") brought a class action suit in the Southern District of New York, alleging that a group of defendants (some were MDL Defendants, some were not) manipulated futures prices on the NYMEX in violation of the Commodity Exchange Act (the "NYMEX Litigation").[13] The class members in the NYMEX Litigation were all financial instrument traders who purchased futures contracts for speculation purposes, as opposed to the class members here, who are commercial and industrial entities that purchased physical natural gas for consumption. Because the NYMEX Litigation involved (in the MDL Defendants' words) "wholly different plaintiffs, different factual allegations and different legal claims" from the claims in the MDL cases, the JPML decided not to consolidate the NYMEX Litigation with the MDL cases, and the NYMEX Litigation proceeded entirely independently of

---

[13] *See Cornerstone Propane Partners, L.P., et al. v. Reliant Energy Services, Inc., et al.*, Case No. 1:03-CV-06186-VM (S.D.N.Y.).

8

the MDL. (MDL Dkt. No. 2640-6, at 2-3.)

The NYMEX Litigation was resolved by class settlements in 2006 and 2007. (MDL Dkt. Nos. 2509-4, at 3; 2509-5, at 3.) The NYMEX defendants (including the MDL Defendants) told the NYMEX court that there were "no competing actions" (such as the MDL cases) that would be impacted by the class settlements and accompanying releases, and this representation was incorporated into the NYMEX court's final orders. (*Id.*) Ten years later, however, the MDL Defendants argued that the class settlement releases in the NYMEX Litigation somehow barred the claims of one of the plaintiffs (Farmland) in the individual *Farmland* action pending in the MDL.

The MDL Court agreed with the MDL Defendants, and dismissed the claims in the *Farmland* action based on the futures class release in the NYMEX Litigation. Emboldened by this result, the MDL Defendants brought a copy-cat motion against another of the individual plaintiffs (Sinclair), and the MDL Court dismissed the claims in the two *Sinclair* actions based on the NYMEX class release. The MDL Defendants then brought identical motions against four of the seven Wisconsin Plaintiffs, and the MDL Court dismissed the claims of these Wisconsin Plaintiffs against all but one of the MDL Defendants, based on the NYMEX class release.

The Farmland and Sinclair plaintiffs promptly appealed the final judgments dismissing their claims (the Wisconsin NYMEX decisions were interlocutory). In both appeals, separate panels of the Ninth Circuit reversed the MDL Court, holding une-

quivocally that the class releases of the Commodity Exchange Act claims in the NY-MEX Litigation as a matter of law have no application to the physical gas antitrust claims in the MDL cases.[14]

On the basis of the clear and controlling decisions of the Ninth Circuit in the *Farmland* and *Sinclair* appeals, the Wisconsin Plaintiffs moved the MDL Court to reconsider and vacate its Wisconsin NYMEX decisions. Although the MDL Court acknowledged that it had been reversed twice on NYMEX, it concluded in its remand Order that this Court should address the NYMEX decisions in the Wisconsin Actions, in conformance with the controlling decisions of the Ninth Circuit in *Farmland* and *Sinclair*. (MDL Dkt. No. 3105, at 2-3.)

This issue has been fully briefed multiple times and is simply a ministerial matter of acknowledging that under the law of the case established in two Ninth Circuit opinions, the NYMEX release has no relevance to the Wisconsin Actions. This Court can decide the matter in short order, without additional briefing.

### 2. Resolving the Wisconsin Plaintiffs' fully-briefed class certification motion.

The second discrete issue is class certification, which was fully briefed twice in the MDL Court (argued once) and briefed and argued once in the Ninth Circuit.

In August 2018, the Court of Appeals remanded with instructions that class certification (which at the time involved four separate classes in separate cases in

---

[14] The Wisconsin Plaintiffs' latest briefing on this issue, which walks through the facts and the Ninth Circuit NYMEX rulings in detail, accompanies this Motion as Exhibit 10. The Wisconsin NYMEX Orders in question (excerpted from Orders addressing several other matters), and the two Ninth Circuit rulings with which they conflict, accompany this Motion as Exhibits 11-15.

10

Wisconsin, Kansas, Missouri and Colorado) should be considered "with particular focus on the potential differences between each of the four actions." (Order,[15] at 4; *see also id.* at 3 (noting that "These differences are particularly acute with respect to the Wisconsin *Arandell* and *NewPage* actions.").) The Court of Appeals instructed the MDL Court to evaluate whether class certification in the Wisconsin Actions, which present case-specific issues that are very different from the Kansas, Missouri and Colorado class cases (not involved here), should be decided by this Court after remand. (*Id.* at 5-6.) The MDL Court determined that this Court is best suited to decide class certification and reserved the issue of certification for this Court after remand. (*See* MDL Dkt. No. 3105, at 3 (finding, with respect to class certification, that "the transferor courts are better positioned to apply the relevant states' laws in these complex matters.").)

Thus, this Court will need to decide class certification. However, certification has been fully briefed multiple times, and the last round of briefing involved separate briefs by the Wisconsin Plaintiffs that focused on the unique Wisconsin antitrust statutes at issue.[16] This Court is thus fully equipped to decide certification on briefing already submitted, consistent with the Court of Appeals' directive to conduct a Wisconsin-specific certification analysis. To avoid unnecessary further delay, this Court should decide class certification on the briefing already filed in the MDL.[17]

---

[15] The Order accompanies this Motion as Exhibit 9.
[16] The Wisconsin Plaintiffs are happy to provide courtesy copies of the last round of certification briefing papers, which are omitted from this filing due to length.
[17] After the Ninth Circuit's ruling on class certification, Defendants submitted a 47-page "Proposed Order" denying class certification, full of new (flawed) arguments, new (mischaracterized) authority, and new (erroneous) reasoning, in addition to misstatements of fact, law, and a general disregard of the Ninth Circuit's directives. (MDL Dkt. No. 3054.) Defendants asked the MDL Court to sign and

### III. This Court Should Set a Trial Date and a Schedule for Deciding the Few Remaining Issues, Including Class Certification, on the Briefs Already Submitted.

After 13 long years of pre-trial litigation, 3,000 separate filings and a docket sheet that is more than 400 pages long, the Wisconsin Actions should be teed up for trial. The ministerial task of applying the controlling Ninth Circuit NYMEX decisions in *Farmland* and *Sinclair* to the Wisconsin NYMEX Orders remains, but this issue can be decided on briefing already submitted. Class certification also remains to be decided, but it too can and should be resolved on briefing already submitted. The Wisconsin Plaintiffs respectfully ask the Court to set a schedule for decisions on both matters and ask the Court to calendar a Scheduling Conference to set a date now for a two-week jury trial, to be held as soon as feasible.

Pre-trial work is otherwise done, and, consistent with Federal Rule of Civil Procedure 1, this Court should "secure the just, speedy, and inexpensive" determination of these Wisconsin Actions by setting a date for these cases to be tried. *See also* Wis. Stat. § 133.18(5) (providing that all civil actions, motions and proceedings under Wisconsin's antitrust laws "*shall be expedited in every way and shall be heard at the earliest practicable date.*" (emphasis added)).

The Wisconsin Actions involve substantial antitrust claims based on documented and admitted price-fixing and seek redress for the many millions of dollars in damages to Wisconsin businesses and commercial entities suffered as result of Defendants' price manipulation. The Wisconsin Plaintiffs have already waited 13 years

---

enter their Proposed Order without further discussion. The MDL Court summarily rejected Defendants' Proposed Order. (MDL Dkt. No. 3105.)

12

to present their case to the jury, and the significant prejudice of delay—including witness unavailability and fading recollections—grows with each passing day. In a case addressing the substantial harm caused by unlawful conduct occurring nearly 20 years ago, this Court should set a trial date so that these longstanding cases can finally reach a resolution.

## CONCLUSION

For the forgoing reasons and in the interest of justice, to achieve resolution and finality to claims that have waited far too long for trial, the Wisconsin Plaintiffs respectfully ask this Court to calendar a Scheduling Conference to set a schedule for vacating the NYMEX rulings and deciding class certification on briefing already submitted, and to set dates for a two-week jury trial against the four remaining Defendant Groups.

Dated: September 12, 2019

Respectfully Submitted,

By: s/ Robert L. Gegios
    Robert L. Gegios
    Ryan M. Billings
    Melinda A. Bialzik
    KOHNER, MANN & KAILAS, S.C.
    Barnabas Business Center
    4650 N. Port Washington Road
    Milwaukee, WI 53212
    Telephone:  (414) 962-5110
    Facsimile:  (414) 962-8725

    *Counsel for Plaintiffs Arandell Corp., et al.,
    and NewPage Wisconsin System Inc.*

# **LIST OF EXHIBITS**

1) List of Remaining Parties
2) Defendants' Fines and Penalties
3) U.S. Supreme Court Decision (Apr. 21, 2015)
4) Arandell Third Amended Complaint (Nov. 3, 2009)
5) NewPage Amended Complaint (July 7, 2010)
6) MDL Court's Arandell-NewPage Consolidation Order (June 4, 2010)
7) MDL Court's Suggestion of Remand (Jan. 14, 2019)
8) JPML's Remand Order (June 4, 2019)
9) 9th Circuit Opinion Reversing MDL Court's Class Certification Order (Aug. 6, 2018)
10) Wisconsin Plaintiffs' Motion for NYMEX Reconsideration (Sept. 7, 2018)
11) MDL Court's 1st Wisconsin NYMEX Order (Mar. 30, 2017)
12) MDL Court's 2nd Wisconsin NYMEX Order (Aug. 22, 2017)
13) MDL Court's 3rd Wisconsin NYMEX Order (Nov. 20, 2017)
14) 9th Circuit Opinion Reversing MDL Court's Farmland NYMEX Order (Mar. 27, 2018)
15) 9th Circuit Opinion Reversing MDL Court's Sinclair NYMEX Order (Aug. 1, 2018)
16) Timeline