# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

ARANDELL CORPORATION, *et al.*,

    Plaintiffs,

v.                                  CASE NO.: 3:07-CV-00076 (BBC)

XCEL ENERGY INC., *et al*.

    Defendants.

NEWPAGE WISCONSIN SYSTEM INC.,

    Plaintiff,

v.                                  CASE NO.: 3:09-CV-00240 (BBC)

CMS ENERGY RESOURCE
MANAGEMENT COMPANY, *et al*.

    Defendants.

## DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION TO SET A TRIAL DATE

### INTRODUCTION AND SUMMARY

    For the last decade, the two above-captioned actions have been pending in the District of Nevada as part of an MDL proceeding. The electronic files for both cases remain in that district.

    Nonetheless, on September 12, 2019, Plaintiffs filed a "Motion to Set a Trial Date," asking this Court to schedule dates on which both matters could be tried here in the Western District of Wisconsin. Plaintiffs are correct that these cases will be returning to this district and a scheduling conference ultimately will be needed. Setting firm dates for these cases at this time is

inappropriate, though, because, among other reasons, the records have not yet even been transferred to this Court.

Accordingly, Defendants[1] request that the Court wait until it has possession of the case files before taking any further steps. Once that happens, Defendants suggest that the Court promptly set a scheduling conference, with a requirement that the parties prepare and file a joint report in advance of that conference, setting forth their respective views on an appropriate schedule for these cases, identifying outstanding issues, and addressing what briefing and pretrial proceedings are warranted. In other words, Defendants ask that the Court adopt a scheduling conference procedure typical of that used in this district.

## IT IS PREMATURE TO LITIGATE THE MERITS

As the Court will undoubtedly notice, Plaintiffs' motion goes well beyond scheduling issues, making a variety of characterizations about the history of the cases and Defendants' actions. Suffice it to say, Defendants disagree with nearly all of what Plaintiffs conveyed. Now is not the time, however, for detailed arguments on the merits of the case. For present purposes, Defendants will simply offer the Court a synopsis of the procedural history concerning class certification and a brief overview of what these cases involve.

With respect to class certification, Plaintiffs seek to litigate on a class-wide basis the antitrust claims of thousands of commercial and industrial businesses that bought gas through

---

[1] The Williams Companies, Inc., Williams Merchant Services Company, LLC (f/k/a Williams Merchant Services Company, Inc.), Williams Gas Marketing, Inc. (f/k/a Williams Power Company, Inc. and Williams Energy Marketing & Trading), Dynegy Marketing & Trade, Dynegy GP Inc., Dynegy Illinois Inc., DMT G.P. L.L.C., CMS Energy Corporation, CMS Energy Resources Management Company, CMS Field Services, Inc. (n/k/a Cantera Gas Company), e prime, inc., Xcel Energy Inc., and Northern States Power Company (collectively, "Defendants").

varying and complex, individually negotiated contracts involving a myriad of contract structures and price types tied to numerous locations. The MDL Court denied Plaintiffs' motions for class certification, holding that Plaintiffs did not prove that antitrust impact (or anticompetitive harm) to class members from Defendants' alleged misconduct could be established through common proof and that individual issues predominated over any potentially common ones.[2]

Plaintiffs appealed the MDL Court's denial of class certification to the Ninth Circuit Court of Appeals. Finding that the district court's class certification order was too terse, the Ninth Circuit vacated it and remanded for the MDL Court "to conduct an appropriate analysis of the Rule 23(b)(3) issue in the first instance, with particular focus on the potential differences between each of the four actions."[3] Importantly, the Ninth Circuit did not disagree with the MDL Court's ultimate conclusion denying class certification, reverse that decision, identify any fault in the denial of class certification, or order certification as Plaintiffs requested. The Ninth Circuit only asked the MDL Court to provide additional analysis because the analysis provided was "only a few sentences" and the "terse order . . . [did] not provide a sufficient analysis to permit us to engage in meaningful appellate review. . . ."[4] The MDL Court, however, chose not to conduct the requested analysis and instead suggested remand of the cases.[5]

As for the merits of these claims, in 2000 and 2001, the price of natural gas spiked sharply as the supply of natural gas fell and the demand for natural gas increased. California felt

---

[2] MDL Dkt. 2832.

[3] MDL Dkt. 3030 at 5. By "four actions," the Ninth Circuit was referring to the two actions pending here (counted as one action) and identical actions filed by plaintiffs in Colorado, Kansas, and Missouri.

[4] *Id*. at 3-4.

[5] MDL Dkt. 3105.

the effects of the natural gas crisis most significantly, if not solely, with higher prices and supply interruptions. In response to the crisis, the Federal Energy Regulatory Commission (FERC), Commodities Futures Trading Commission (CFTC), and the SEC investigated allegations that several natural gas trading firms had falsely reported natural gas trades in the Western markets and, after investigating, punished individual firms and traders for alleged unilateral false reporting. None of the regulators, however, suggested—let alone concluded—that Defendants agreed or conspired with each other and other gas trading firms to false report, manipulate prices, or restrict output. This critical distinction—between allegedly illegal unilateral conduct (*i.e.*, alleged false reporting) and a conspiracy to report false prices with a common, coordinated purpose, behavior, and goals—matters greatly here because Plaintiffs allege antitrust violations.

Plaintiffs' antitrust conspiracy claims require proof of an agreement to restrain trade; there is none. Because extensive discovery[6] has revealed no evidence of a multilateral antitrust conspiracy, Plaintiffs rely instead on circumstantial evidence to infer an agreement, which typically requires proof (at minimum) of parallel conduct among alleged co-conspirators (*i.e.*, a pattern of price changes or restrictions in output). But Plaintiffs' own experts' analysis of the data confirmed the alleged false reporting was not parallel: Defendants were simultaneously reporting both higher and lower prices with no observable trends, coordination, or pattern.

This is not surprising. As wholesale natural gas marketers during the relevant period, Defendants bought and sold physical natural gas in wholesale markets throughout the United States. Some Defendants desired higher prices and others lower, depending on whether they

---

[6] The parties have taken more than 150 fact depositions, plus dozens of expert depositions, and exchanged 100,000s of documents, as well as extensive electronic database sets and numerous and extensive expert reports.

were buying or selling. Any Defendant's preference for higher or lower prices at any given time and location was situational, inconsistent, and dependent upon a number of factors. Defendants frequently had conflicting positions on any given day or at any given location. And, because Defendants often traded with one another, their interests in the direction of prices were diametrically opposed. A seller would prefer a higher price while the buyer wanted a lower price. As such, their economic interests were inconsistent with an alleged conspiracy to raise natural gas prices.

Absent any evidence from which a multilateral conspiracy to raise prices or even parallel misreporting could be inferred, Plaintiffs were forced to adopt a new theory of liability. After fact discovery closed,[7] Plaintiffs abandoned the theory of liability they alleged in their Complaints. Instead, they now agree that Defendants did not participate in "sustained, coordinated multi-lateral conduct."[8] Instead, Plaintiffs contend that Defendants "engaged in a pervasive scheme to report false, misleading and knowingly inaccurate price information in order to collectively gain financial benefit."[9] Simply stated, Plaintiffs now remarkably claim that uncoordinated, conflicting, unilateral conduct violates Wis. Stat. §133.03(1) when that unilateral conduct ends up resulting in a "collective[] gain" at some point. Neither Wisconsin law nor Section 1 of the Sherman Act supports Plaintiffs' position.

---

[7] *See supra* n.6.

[8] Rebuttal Report on Merits of Plaintiffs' expert George L. Donkin at 20-21. *Compare with, e.g.,* MDL Dkt. 1846, Arandell Third Amended Complaint at ¶ 70 (alleging that Defendants engaged in an industrywide conspiracy to "collusively and artificially inflate the price of natural gas paid by commercial entities in Wisconsin above competitive levels").

[9] *Id.*

Plaintiffs' post-discovery theory and the evidence on which it is based also eviscerate their ability to demonstrate antitrust impact and injury (*i.e.*, that the allegedly collusive behavior raised prices) on a classwide basis or as to any individual plaintiff. Given that there was no actual conspiracy to raise prices, as Plaintiffs now concede, Plaintiffs will be unable to demonstrate that common issues predominate regarding antitrust impact and injury. For precisely that and additional reasons, the MDL Court correctly denied class certification. And whether as class or individual claimants, Plaintiffs still must demonstrate that they were adversely impacted by the alleged conspiracy. Their post-discovery theory, and the evidence on which it is based, makes that impossible.

## CONCLUSION

Defendants request that when the electronic files are returned to Wisconsin by the MDL Court, the Court promptly set a scheduling conference, with a requirement that the parties file a joint report in advance of that conference.

Date: September 19, 2019

By: /s/ *Theodore R. Scarborough*
Theodore R. Scarborough
tscarborough@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Sean A. Commons
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6687
Fax: (213) 896-6600

Attorneys for Defendants Cantera Natural Gas, Inc.; Cantera Resources, Inc.; CMS Energy Resources Management Company; CMS Field Services Inc.; CMS Energy Corporation; and Cantera Gas Company

6

By: /s/ *Michael J. Modl*
    Michael J. Modl
    SBN 1011419
    AXLEY BRYNELSON, LLP
    2 E. Mifflin Street, Suite 200
    Post Office Box 1767
    Madison, WI 53701-1767
    Telephone: (608) 257-5661
    Facsimile: (608) 257-5444
    E-mail: mmodl@axley.com

    Joseph August Fischer III
    tfischer@jw.com
    JACKSON WALKER LLP
    1401 McKinney, Suite 1900
    Houston, TX 77010
    Tel: (713) 752-4530
    Fax: (713) 308-4130

    Jay K. Wieser
    jwieser@jw.com
    JACKSON WALKER LLP
    777 Main Street, Suite 2100
    Fort Worth, TX 76102
    Tel: (817) 334-7200
    Fax: (817) 870-5107

Attorneys for Defendants Dynegy Illinois Inc.; DMT G.P. L.L.C.; Dynegy GP Inc.; and Dynegy Marketing and Trade


By: /s/ *Bruce A. Schultz*
    Robert T. Adams
    rtadams@shb.com
    Steven D. Soden
    ssoden@shb.com
    Mitchell F. Engel
    mengel@shb.com
    SHOOK, HARDY & BACON LLP
    2555 Grand Boulevard
    Kansas City, MO 64108
    Tel: (816) 474-6550
    Fax: (816) 421-5547

      Bruce A. Schultz
      bschultz@cnsbb.com
      Coyne, Schultz, Becker & Bauer, S.C.
      Suite 1000
      150 East Gilman Street
      Madison, WI 53703
      608-255-1388 (office)
      608-255-8592 (facsimile)

Attorneys for Defendants The Williams Companies, Inc., Williams Merchant Services Company, LLC (f/k/a Williams Merchant Services Company, Inc.), and Williams Gas Marketing, Inc. (f/k/a Williams Power Company, Inc. and Williams Energy Marketing & Trading)


By: /s/ *Kathryn A. Reilly*
    Kathryn A. Reilly
    Chuan ("CiCi") Cheng
    WHEELER TRIGG O'DONNELL LLP
    370 17th Street, Suite 4500
    Denver, CO 80202-5647
    Telephone: (303) 244-1800
    Facsimile: (303) 244-1879
    reilly@wtotrial.com
    cheng@wtotrial.com

    Michael John Miguel
    Brett D. Bissett
    MCKOOL SMITH P.C.
    300 South Grand Ave., Suite 2900
    Los Angeles, CA 90071
    Telephone: (213) 694-1030
    Facsimile: (212) 694-1234
    mmiguel@mckoolsmith.com
    bbissett@mckoolsmith.com

    Kendall W. Harrison
    GODFREY& KAHN, S.C.
    One East Main Street, Suite 500
    P.O. Box 2719
    Madison, WI  53701-2719
    Telephone: (608) 257-3911

kharriso@gklaw.com

Attorneys for Defendants e prime, inc., Northern States Power Company, and Xcel Energy Inc.

## **CERTIFICATE OF SERVICE**

I certify a copy of this pleading was filed electronically on the CM/ECF System on September 19, 2019.

By: */s/ Michael Modl*
Michael Modl