IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARANDELL CORPORATION, *et al.*,

                Plaintiffs,

v.

XCEL ENERGY INC., *et al.*,

                Defendants.

OPINION AND ORDER

07-cv-076-jdp

---

NEWPAGE WISCONSIN SYSTEM INC.,

                Plaintiff,

v.

CMS ENERGY RESOURCE MANAGEMENT COMPANY, *et al.*,

                Defendants.

09-cv-240-jdp

---

In these consolidated cases, certain commercial and industrial consumers of natural gas in Wisconsin claim that defendants conspired to increase natural gas prices between 2000 and 2002. These cases were formerly centralized with several other actions in the District of Nevada as part of a multi-district ligation (MDL). After spending more than a decade in MDL, these cases were remanded to this court in 2019 for additional pre-trial decisions and trial.

On October 21, 2022, plaintiffs in both of the Wisconsin cases reached a settlement with defendants The Williams Companies, Inc., Williams Merchant Services Company LLC (f/k/a Williams Merchant Services Company, Inc.), and WPX Energy Marketing, LLC (f/k/a Williams Power Company, Inc.). Dkt. 276-1 (Williams settlement agreement).[1] Pending before

---

[1] Docket citations are to case number 07-cv-076-jdp.

the court is plaintiffs' unopposed motion to certify a class under Federal Rule of Civil Procedure 23 for the purpose of settlement, preliminarily approve the settlement agreement, appoint class representatives and class counsel, and approve a class notice.[2] Dkt. 275. The court will grant the motion, direct plaintiffs to send notice to the class members, set deadlines related to final approval, and set a date for a fairness hearing.

ANALYSIS

Plaintiffs contend that the Williams defendants participated in an unlawful conspiracy to manipulate natural gas price indices in violation of Wisconsin state antitrust laws. They have alleged that defendants' price manipulation began around January 1, 2000 and continued in many respects until at least October 31, 2002, resulting in class members paying excessive prices for natural gas. Plaintiffs assert that the manipulation was carried out through agreements to falsely report prices to trade publications that generated price indexes and conduct wash trades and churning activities. They also allege that the manipulative conduct was facilitated through oral communications, face-to-face meetings, electronic communications, trading platforms, and other means.

A. Class certification

Although the parties have settled, the court must still certify that the proposed class satisfies the three requirements for class certification under Rule 23: (1) the class must be clearly defined with objective criteria, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must satisfy the threshold requirements of numerosity, commonality,

---

[2] This court and the MDL court have approved three similar settlements in these cases with other defendant groups. *See* Dkt. 276, ¶ 21; Dkt. 276-2 at 2.

typicality, and adequacy of representation under Rule 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b).

1. **Class definition**

    The parties propose the following class definition for purposes of settlement:

    > All industrial and commercial purchasers of natural gas for their own use or consumption during the period from January 1, 2000 until October 31, 2002, and which gas was used or consumed by them in Wisconsin. Excluded from the Class are (a) entities that purchased natural gas for resale (to the extent of such purchase for resale); (b) entities that purchased natural gas for generation of electricity for the purpose of sale (to the extent of such purchase for generation); (c) entities that purchased natural gas from entities that sold natural gas at rates approved by the Wisconsin Public Service Commission (to the extent of such purchases at such approved rates); (d) defendants and their predecessors, affiliates and subsidiaries; and (e) the federal government and its agencies.

Dkt. 276-1 at 3.

The class definition is not vague, based on subjective criteria, or defined in terms of success on the merits. *See Mullins*, 795 F.3d at 660-61. It identifies a particular group of companies (industrial and commercial purchasers of natural gas with clearly defined exclusions) harmed in a particular way (paid more for natural gas than they would have absent the alleged conspiracy) during a specific period in a particular area. So the parties have satisfied the first requirement for class certification.

2. **Rule 23(a) requirements**

    Rule 23(a)(1) requires a proposed class that is so numerous that joinder is impracticable. The court of appeals has deemed classes of 40 members to be sufficient. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). *See also* 1 Newberg and Rubenstein on Class Actions, § 3:12 (6th ed. 2022) ("[A] class of 40 or more members raises

3

a presumption of impracticability of joinder based on numbers alone."). Plaintiffs state that the United States Energy Information Agency (EIA) reported thousands of commercial and industrial purchasers of natural gas in Wisconsin between 2000 and 2002, so numerosity is easily met. Dkt. 276, ¶ 19.

Commonality requires that the action involve "questions of law or fact common to the class." Rule 23(a)(2). A proposed class meets this requirement if "determining the truth or falsity of [a] common contention will resolve an issue that is central to the validity of each claim." *Chi. Teachers Union, Local No. 1. v. Bd. of Educ.*, 797 F.3d 426, 434 (7th Cir. 2015). The common question of whether the Williams defendants participated in a nationwide price manipulation conspiracy that resulted in increased prices for natural gas across Wisconsin can be answered by evidence that applies to all plaintiffs. Therefore, the commonality requirement is met.

Typicality requires the class representatives' claims to be typical of the claims of the proposed class. Plaintiffs suffered the same baseline harm that all members of the proposed class suffered from the alleged price fixing, even if class members purchased natural gas at different prices and in different ways. *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 928-29 (7th Cir. 2016) ("Even for transactions where prices were negotiated individually or a longer term contract existed, the district court found, reasonably, that the 'starting point for those negotiations would be higher if the market price for the product was artificially inflated.'"). Plaintiffs have satisfied this requirement.

Adequacy of representation has two components: (1) whether the class representatives' interests are aligned with the class's interests; and (2) whether class counsel can capably litigate the case. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). The court sees

no apparent conflicts between the named plaintiffs' interests and those of the rest of the class. Therefore, Arandell Corporation, Briggs & Stratton Corporation, Carthage College, Ladish Co., Inc. (n/k/a ATI Ladish LLC), Merrick's, Inc., Verso Minnesota Wisconsin LLC (f/k/a NewPage Wisconsin System Inc., n/k/a Billerud Wisconsin LLC), and Sargento Foods, Inc., are appointed as class representatives.

Plaintiffs' counsel, which includes five law firms in the Midwest, have litigated these and related cases for Wisconsin class members for 17 years, securing settlements totaling approximately $77 million for the Wisconsin class. *See* dkt. 163, ¶¶ 27, 32-33. Nothing in the litigation up to this point calls counsel's capabilities into question to prevent their appointment under Rule 23(g). In fact, the Kohner Mann & Kailas, S.C. and Polsinelli PC firms have already been appointed by the MDL Court in the seven prior class settlements involving Wisconsin. So the court will grant plaintiffs' request that the law firms of Kohner Mann & Kailas, S.C., Perkins Coie LLP, and Polsinelli PC be appointed counsel for the settlement class.

3. **Rule 23(b)(3) requirements**

In addition to satisfying Rule 23(a)'s four prerequisites, these actions must satisfy one of the Rule 23(b) provisions. Plaintiffs rely on Rule 23(b)(3), which requires that the action's common questions of law or fact predominate over questions that affect only individual members, and that the controversy would best be resolved through a class action. To determine whether common questions predominate, the court considers (1) the class members' interests in individually controlling their own claims; (2) the nature and extent of any other litigation about the controversy; (3) the desirability of concentrating the litigation here; and (4) any management challenges that the case may present. Rule 23(b)(3).

First, although individual class members have an interest in controlling their own claims, they also have an interest in efficiently resolving their claims, which a class action and the proposed settlement provide. Second, there is no indication that any class members are pursuing other litigation related to the claims at issue in this case. Third, consolidating the common issues and resolving them in one case is efficient. Fourth, the case presents no management difficulties because the parties have settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (court need not inquire into management difficulties when considering class certification for purposes of settlement). So the predominance requirement is satisfied.

Superiority is also satisfied. As found in the previous three settlements in these cases, individual litigation of each class member's claims would be expensive and time-consuming, and the cost of litigation would likely exceed any recovery. Resolving those claims through a class action will save time and expense for both the parties and the court.

The proposed class satisfies all of Rule 23's requirements, so the court will certify the proposed class for settlement purposes. Next the court must determine whether to preliminarily approve the proposed settlement.

## B.  Preliminary approval

The settlement, Dkt. 276-1, provides for a fund of $12 million from which expenses, attorneys' fees, and service awards will be deducted. Specifically, plaintiffs' counsel seeks to recover costs and expenses they have incurred from February 1, 2020 through September 30, 2022, not to exceed $143,000. *See* dkts. 276, ¶ 35; 277, ¶ 16, and 278, ¶ 12. In addition, plaintiffs will seek up to $100,000 in administration fees from the settlement fund for AB Data, Ltd., which plaintiffs' counsel has selected to serve as the claims administrator pending

the court's approval. *See* dkt. 276, ¶ 25. No more than $50,000 in administrative fees will be incurred in the notice, exclusion, and objection process before final approval. *Id.* Plaintiffs' counsel will seek attorneys' fees not to exceed 35% of the settlement fund that remains after costs and expenses (approximately $4.1 million). The same 35% net fee recovery was approved in six prior Wisconsin class settlements. Settlement class counsel also may request a service award for each of the class representatives in an amount that the court deems appropriate.

The remaining settlement fund will be allocated to class members based on the volume of natural gas that each participating class member purchased in proportion to the total purchased by all participating class members. The resulting percentages will be multiplied against the net settlement fund for the Wisconsin class (total settlement minus all expenses, attorneys' fees, and service awards) to determine each participating class members' payment. Class members will receive a net distribution of almost $8 million.[3]

The court has reviewed the terms of the proposed settlement and concludes that they are "within the range of possible approval" under Rule 23(e)(2). *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). So the court will grant the motion for preliminary approval of the settlement and appoint AB Data, Ltd. as the settlement administrator.

## C. Class notice

Plaintiffs have identified the identity of potential class members from customer information produced by defendants, documents and information produced by local natural gas distribution companies, and nitrogen oxide emissions reports filed with the EPA and EIA,

---

[3] Wisconsin class members participating in previous settlements have recovered more than $39 million to date. Dkt. 275 at 9.

which identify entities that burn natural gas. All potential plaintiffs and defendants are well-established business entities and organizations, generally with their own corporate attorneys.

As with the previous class settlements, plaintiffs propose that a long form notice, Dkt. 276-3, be sent by U.S. mail or electronic mail to each class member. A short form notice, Dkt. 276-4, will then be published in major newspapers of general circulation in Wisconsin. Both notices, along with the settlement agreement, will be posted on a website accessible to potential class members.

The court has reviewed the proposed long and short form notices and finds that they comply with the requirements of Rule 23. The notices plainly state the nature of the action, definition of the class, issues, option for members to appear through an attorney, option to be excluded from the class, and binding effect of judgment on participating class members.

## D. Deadlines and final fairness hearing

The court will hold a final fairness hearing via video conference on June 29, 2023, at 1:00 p.m. The parties may have until April 7, 2023, to disseminate notice to the class, giving the class members until June 5, 2023 to request exclusion from the settlement class and until May 30, 2023, to object to the settlement and/or file a notice of intention to appear at the fairness hearing.

The parties have until June 8, 2023, to file a motion for final approval addressing the factors in Rule 23(e)(2) and until June 5, 2023 to provide one another with PDF copies of all objections received. Plaintiffs have until June 8, 2023, to file a motion for attorney fees; defendants may have until June 15, 2023, to respond.

Plaintiffs have until June 13, 2023, to provide defendants with the list of entities that timely requested exclusion from the settlement class. Counsel for the parties may file and serve written responses to any objection no later than five days before the fairness hearing.

In accordance with the terms of the settlement agreement: (1) the Williams defendants shall deliver into the escrow account the initial installment of its payment towards the settlement fund within fourteen 14 days of the entry of this order; and (2) a maximum of $50,000 from this payment may be used to cover the costs of distributing the class notices and administering the settlement fund up to the date that the settlement agreement becomes final.

Entered March 7, 2023.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge