# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

ARANDELL CORPORATION, *et al.*,

        Plaintiffs,

v.                                   CASE NO.: 3:07-cv-00076-jdp

XCEL ENERGY, INC., *et al.*,

        Defendants.

---

NEWPAGE WISCONSIN SYSTEM INC.,

        Plaintiff,

v.                                   CASE NO.: 3:09-cv-00240-jdp

CMS ENERGY RESOURCE MANAGEMENT
COMPANY, *et al.*,

        Defendants.

---

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT WITH THE DYNEGY AND XCEL DEFENDANTS,
AND DIRECTING NOTICE TO SETTLEMENT CLASS**

**[EXPEDITED CONSIDERATION REQUESTED]**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 4

I. FACTUAL AND PROCEDURAL HISTORY ................................. 4

II NATURE OF THE SETTLEMENT……………………………………………..13

III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT……..14

 A. The Requirements of Rule 23(a) Are Satisfied in This Case ............................... 16

  1. The Wisconsin Class Is So Numerous That Joinder of All Members Is Impracticable ........................................................................... 16

  2. This Case Involves Many Questions of Law and Fact Common to the Wisconsin Class ............................................................................. 16

  3. Plaintiffs' Claims Are Typical of the Wisconsin Class's Claims ............... 18

  4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Wisconsin Class ............................................................................. 20

   a. Adequacy of Representation ................................................. 20

   b. Fairness of Representation ................................................... 21

 B. The Requirements of Rule 23(b)(3) Are Satisfied in this Case ........................... 27

  1. Common Questions of Law and Fact Predominate Over Individual Questions ...................................................................................... 28

  2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Case Where No Other Practicable Remedy Exists .......................……………………… ............................ 29

 C. The Court Should Appoint Settlement Class Counsel ........................................... 30

 D. Rule 23(e) Fairness, Reasonableness and Adequacy Hearing ............................. 31

IV. PROPOSED PLAN OF SETTLEMENT ........................................................ 31

V. PROPOSED PLAN OF ALLOCATION ......................................................... 34

VI. THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE .......................... 34

CONCLUSION ......................................................................................................... 35

<u>**LIST OF DECLARATIONS AND EXHIBITS**</u>

- Declaration of Ryan M. Billings

    Exhibits to the Billings Declaration:

    Exhibit 1:    KMK Attorney Biographies

    Exhibit 2:    Dynegy + Xcel Settlement Agreement

    Exhibit 3:    Wisconsin Fee Agreements

    Exhibit 4:    Proposed Long Form Class Notice

    Exhibit 5:    Proposed Short Form Class Notice

- Declaration of Chris Hanewicz

    Exhibit 1:    Hanewicz Biography

- Declaration of Russ Jones

- Declaration of AB Data

    Exhibits to the AB Data Declaration:

    Exhibit 1:    AB Data, Ltd., Experience and Prior History

    Exhibit 2:    Proposed Long Form Class Notice

    Exhibit 3:    Proposed Claim Form

    Exhibit 4:    Proposed Short Form Class Notice

- Proposed Order Granting Preliminary Approval

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page(s)**

*Alexander v. Q.T.S. Corp.*,
   No. 98 C 3234, 1999 WL 573358 (N.D. Ill. July 30, 1999) ...................................................29

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................................14, 20

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
   568 U.S. 455 (2013).........................................................................................................28

*Anderson v. Weinert Enters., Inc.*,
   986 F.3d 773 (7th Cir. 2021) ...........................................................................................16

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ...............................................................................14, 15, 31

*Arreola v. Godinez*,
   546 F.3d 788 (7th Cir. 2008) ...........................................................................................16

*In re Broiler Chicken Antitrust Litigation*,
   No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) .................................................23

*In re Bromine Antitrust Litig.*,
   203 F.R.D. 403 (S.D. Ind. 2001).......................................................................................29

*In re Citric Acid Antitrust Litig.*,
   1996 WL 655791 (N.D. Cal. Oct. 2, 1996)........................................................................19

*Copeland v. Wabash Cnty., Indiana*,
   338 F.R.D. 595 (N.D. Ind. 2021) ......................................................................................20

*De La Fuente v. Stokely-Van Camp, Inc.*,
   713 F.2d 225 (7th Cir. 1983) .......................................................................................19, 20

*In re Dynamic Random Access Memory* (*DRAM*) *Antitrust Litig.*,
   2006 WL 1530166 (N.D. Cal. June 5, 2006).......................................................................17

*Espenscheid v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) ...........................................................................................29

*Estate of Garrison v. Warner Bros., Inc.*,
   1996 WL 407849 (C.D. Cal. 1996)...................................................................................19

*In re Flat Glass Antitrust Litig.*,
  191 F.R.D. 472 (W.D. Pa. 1999)……………………………………………………………...19

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982)…………………………………………………………………….4

*Gen. Tele. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)……………………………………………………………………………18

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) ....................................................................... 14, 23, 24, 25

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)…………………………………………………………………..30

*Harrington v. City of Albuquerque*,
  222 F.R.D. 505 (D.N.M. 2004).........................................................................................31

*Harris v. U.S. Physical Therapy, Inc.*
  2012 WL 3277278 (D. Nev. July 18, 2002) .....................................................................15

*Hawaii v. Standard Oil Co. of Cal.*
  405 U.S. 251 (1972)...........................................................................................................25

*Johnson v. Meriter Health Servs. Employee Ret. Plan*,
  2014 WL 12725371 (W.D. Wis. Sept. 17, 2014) ..............................................................34

*Kainz v. Anheuser-Busch, Inc.*,
  194 F.2d 737 (7th Cir. 1952) .............................................................................................17

*Kleen Prods. LLC v. Int'l Paper Co.*,
  831 F.3d 919 (7th Cir. 2016) ...........................................................................14, 17, 19, 20

*In re Linerboard Antitrust Litig.*,
  296 F. Supp. 2d 568 (E.D. Pa. 2003) ...............................................................................14

*McFields v. Dart*,
  982 F.3d 511 (7th Cir. 2020) .............................................................................................18

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009).........................................................................22, 23

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) .............................................................................................28

*Mirfasihi v. Fleet Mortg. Corp.*,
  356 F.3d 781, 786 (7th Cir. 2004) .....................................................................................33

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009) ...................................................................................19

*In re Ready-Mixed Concrete Antitrust Litig.*,
    261 F.R.D. 154 (S.D. Ind. 2009)............................................................................19

*Red Barn Motors, Inc. v. NextGear Capital, Inc.*
    915 F.3d 1098 (7th Cir. 2019) .................................................................................17

*Reiter v. Sonotone Corp.*
    442 U.S. 330 (1979).................................................................................................25

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005).......................................................................17, 19

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ..................................................................................18

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ......................................................20

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ..................................................................................29

*In re Sugar Antitrust Litig.*,
    559 F.2d 481 (9th Cir. 1977) ..................................................................................14

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)....................................................................................28

*Susman v. Lincoln Am. Corp.*,
    561 F.2d 86, 90 (7th Cir. 1977) ..............................................................................20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ..................................................................................15

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ..................................................................................24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010)......................................................................28, 29

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002)............................................................................28

*In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. 2008)...............................................................................17

*Tyson Foods, Inc. v. Bouaphakeo*
     577 U.S. 422 (2016) ...........................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011) .......................................................................................17, 30

*Zenith Radio Corp. v. Hazeltine Research, Inc.*
     395 U.S. 100 (1969) ...........................................................................................25

## Statutes and Rules

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Wis. Stat. § 133.03 ...........................................................................................20

Wis. Stat. § 133.14 ...........................................................................................20

Wis. Stat. § 133.18 ...........................................................................................20

## Other Authorities

B. Fitzpatrick, *The Conservative Case for Class Actions* (Nov. 2019 ed.) ...................................25

*Manuel for Complex Litigation* (4th ed. 2008) ...........................................15

*Moore's Federal Practice* (3d ed. 2003) ....................................................33

*Newberg on Class Actions* (5th ed. 2019) ...............................................16, 23

## INTRODUCTION

After nearly 19 years of civil litigation, and following prior class settlements approved by the MDL Court and this Court with eight of the ten groups of Defendants in these Wisconsin Actions,[1] the final two Defendant groups (Dynegy and Xcel[2]) have entered into a settlement agreement (the "Dynegy and Xcel Settlement") with the Wisconsin Class Plaintiffs. Plaintiffs, Dynegy and Xcel respectfully move the Court for an order preliminarily approving the Dynegy and Xcel Settlements as proposed herein.

The putative class in the Wisconsin Actions (hereinafter, collectively the "Wisconsin Class") has reached a new settlement of $16 million with Dynegy and Xcel.

In 2017, the MDL Court[3] approved class settlements between the Wisconsin Class and four Defendant groups (Duke, AEP, Coral and OneOk), for a total gross settlement amount exceeding $20 million. After the MDL Court approved the same fee and expense formulas as requested here, the Wisconsin Class received a net distribution of more than $12 million.

In 2019, the MDL Court approved class settlements between the Wisconsin Class and two more Defendant groups (El Paso and CenterPoint), for an additional gross settlement amount exceeding $29 million. After the MDL Court again approved the same fee and expense formulas requested here, the Wisconsin Class received a net distribution of more than $17 million.

In 2020, this Court approved a class settlement between the Wisconsin class and an additional Defendant (CMS), for an additional gross settlement amount of $15 million. After the

---

[1] The Wisconsin Actions are *Arandell Corporation, et al. v. Xcel Energy, Inc., et al.*, 3:07-cv-00076-jdp (the "*Arandell* action", consolidated with *NewPage Wisconsin System, Inc. v. CMS Energy Resource Management Co., et al.*, 3:09-cv-00240-jdp (the "*NewPage* action," and collectively with the *Arandell* action, the "Wisconsin actions").

[2] The settling defendants are Dynegy Illinois Inc., DMT G.P. L.L.C., Dynegy GP Inc. and Dynegy Marketing and Trade (collectively "Dynegy"); and e prime, inc., Northern States Power Company and Xcel Energy Inc. (collectively "Xcel," and collectively along with Dynegy, the "Settling Defendants").

[3] Documents filed in the MDL Court are referenced in the form of "MDL Dkt No. [#]." Documents filed in the *Arandell* action are referenced in the form of "ECF No. [#]."

Court approved the same fee and expense formulas as requested here, the Wisconsin Class received a net distribution exceeding $9 million.

In 2023, this Court approved a class settlement between the Wisconsin class and another Defendant (Williams), for an additional gross settlement amount of $12 million. After the Court approved the same fee and expense formulas as requested here, the Wisconsin Class received a net distribution of more than $7 million.

If, as requested, this Court approves the proposed fees and expenses, Class Members will receive a net distribution of more than $10 million, for a total Wisconsin Class recovery of approximately $56 million.

These consolidated Wisconsin class actions are unlike most such actions given the parties involved and the complexity, longevity, scope and expense of the litigation. First, all Plaintiffs and all Defendants are well-established business entities and organizations, generally with their own corporate attorneys in addition to outside Class Counsel to advise them on the terms of the engagement agreements and settlements. Plaintiffs fully understand the risks and responsibilities of their roles as class representatives, and each made a deliberate and considered decision regarding fees and expenses entering into the agreements.

Second, these cases have a much longer and more litigious history than most class actions. The first of the Wisconsin actions commenced in 2006, and both Wisconsin actions were consolidated with cases from several other states in the MDL, before finally returning to Wisconsin in 2019. The cases have been hard-fought for nearly 19 years. They have already gone four times to the United States Circuit Court of Appeals for the Ninth Circuit and once to the United States Supreme Court. In each instance, adverse decisions were reversed and remanded in favor of the

Plaintiffs. Most recently, this Court's Order granting Class Certification was appealed to the Seventh Circuit Court of Appeals, which vacated and remanded for further consideration.

Third, by the time Final Approval is granted, Wisconsin Class Counsel will have advanced almost $3.5 million in expenses prosecuting these cases, all without any guarantee of reimbursement. For these reasons and others stated herein, Wisconsin Class Counsel asks the Court to approve reimbursement of their expenses through Final Approval.[4]  Wisconsin Class Counsel also asks this Court to approve a contingent fee in the amount of 35% of the settlement amounts *after* expenses have been deducted, which results in a lower *net* fees recovery. With this settlement, the aggregate gross class recoveries in the Wisconsin Actions to date will be $92,772,000. The aggregate expenses by the Wisconsin Class counsel (through date of this filing and anticipated costs through Final Approval) are expected to reach almost $3.5 million. Utilizing the same 35% net fee recovery for the Dynegy and Xcel Settlements that was approved in the eight earlier Wisconsin Class settlements would provide Wisconsin Class Counsel with a net fee recovery of approximately one-third (33.7%) of all gross class recoveries to date.

The specific time invested shall be detailed in the forthcoming Application for Fees and Expenses. But to date, counsel has invested nearly $50 million of time in these class actions. This investment more than warrants the reasonable contingent fee agreed to by the named Plaintiffs.

In preparing this motion and memorandum in support, counsel has studied the Honorable Chief Judge James D. Peterson's previous opinions regarding approval of class settlements, including the Court's previous Order granting final approval of the Williams Settlement on July

---

[4] In prior settlements, Wisconsin Class counsel received expense reimbursement through September 30, 2022. Since that time, substantial additional expenses have been incurred. Billings Decl. ¶ 35; Hanewicz Decl.¶ 14; Jones Decl. ¶ 12.

11, 2023.[5] Plaintiffs have followed the Court's guidance, and, as explained below, believe that this Settlement meets all requirements for preliminary approval.[6]

At this time, this Court is not being asked to determine with finality whether the Settlement and the related plan of allocation are fair, reasonable and adequate. Rather, consistent with controlling law, the question now is only whether the Dynegy and Xcel Settlements are well within the range of possible approval to justify sending and publishing notice to Class Members, and to schedule a final approval hearing.[7] Nevertheless, this memorandum outlines the issues the Court must consider at the final approval hearing, including the fairness, reasonableness and adequacy of the Settlement and how Plaintiffs and Wisconsin Class Counsel will fairly and adequately protect the interests of the Wisconsin Class, as they have these past 19 years.[8] Plaintiffs respectfully submit that the Court should grant this motion because the Dynegy and Xcel Settlements are unquestionably fair and well within the range for final approval consideration.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL AND PROCEDURAL HISTORY

The Wisconsin Actions arise from a well-publicized arrangement to manipulate the prices of natural gas sold to industrial and commercial users in the 2000 to 2002 time frame in violation of the laws of the state of Wisconsin. This settlement resolves claims brought by the Wisconsin Class against Dynegy and Xcel. The respective Complaints define the Class Members as:[9]

> All industrial and commercial purchasers of natural gas for their own use or consumption during the Relevant Time Period [from January 1, 2000 until October 31, 2002], and which gas was used or

---

[5] ECF No. 311. This Order was amended for non-substantive reasons on July 20, 2023. *See* ECF No. 314.

[6] *See, e.g.*, *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982).

[7] *Id.*

[8] *Id*.

[9] *Arandell* and *NewPage* Complaints.

consumed by them in Wisconsin. Excluded from the Class are (a) entities that purchased natural gas for resale (to the extent of such purchase for resale); (b) entities that purchased natural gas for generation of electricity for the purpose of sale (to the extent of such purchase for generation); (c) entities that purchased natural gas from entities that sold natural gas at rates approved by the Wisconsin Public Service Commission (to the extent of such purchases at such approved rates); (d) defendants and their predecessors, affiliates and subsidiaries; and (e) the federal government and its agencies.

Plaintiffs have alleged that Defendants' price manipulation began no later than January 1, 2000, and continued in many respects until at least October 31, 2002. Plaintiffs have alleged, and their experts' work has confirmed, that Defendants' actions resulted in Wisconsin Class Members paying excessive prices for natural gas. Defendants' manipulation took advantage of the fact that natural gas is a homogenous, perfectly fungible product that is sold in a highly-liquid and interdependent U.S. market, where manipulation anywhere would have predictable effects everywhere. Working together (as each individually lacked market power), Defendants systematically manipulated market prices and reaped hundreds of millions of dollars in unlawful profits at the expense of class members. The manipulation was carried out through agreements to report false prices and volumes to trade publications that generated price indexes, as well as wash trades and churning activities. The manipulative conduct was facilitated in several ways, including through oral communications, face-to-face meetings, electronic communications, trading platforms and other means.[10]

Defendants, along with other co-conspirators, entered into Consent Decrees with the Commodities Futures Trading Commission (CFTC).  Moreover, several Defendants entered into Stipulation and Consent Orders with the Federal Energy Regulatory Commission (FERC), Deferred Prosecution Agreements with the United States Department of Justice (DOJ) and Cease

---

[10] Billings Decl. ¶ 8.

and Desist Orders with the Securities & Exchange Commission (SEC). Additionally, numerous employees of Defendants entered into plea agreements, were convicted, or entered into other agreements with the DOJ, CFTC and/or the SEC.[11]  In addition to governmental actions, many Defendants and other co-conspirators have been defendants in companion class action cases brought by consumers in other states alleging this same conspiracy to manipulate prices as that alleged herein. Those Defendants have settled all of those cases in a manner that was beneficial to Class Members and approved by the MDL Court.[12]

The Plaintiffs have faithfully pursued Defendants' violations of Wisconsin law on behalf of the Class Members over an extraordinary period of time. Nearly 19 years have passed since the *Arandell* Plaintiffs in Wisconsin first filed their class and individual actions against these Defendants. Defendants have fought the Wisconsin Actions at every step, filing numerous dispositive motions (more than 36 dispositive motions in the Wisconsin Actions alone[13]) that have thus far resulted in four separate appeals to the U.S. Court of Appeals for the Ninth Circuit, one appeal to the U.S. Court of Appeals for the Seventh Circuit, and two petitions (one accepted) by Defendants for certiorari to the U.S. Supreme Court.

Plaintiffs have filed three motions for class certification.  The MDL Court denied the first filing without prejudice when it found (on reconsideration) that these cases were preempted and dismissed them, a determination that both the Ninth Circuit and U.S. Supreme Court found to be in error. The second filing occurred on March 7, 2016, after the U.S. Supreme Court upheld the Ninth Circuit's denial of Defendants' preemption defense. The MDL Court denied that motion, but the Ninth Circuit swiftly reversed that decision on August 6, 2018. On June 4, 2019, the

---

[11] Billings Decl. ¶ 9.

[12] *See e.g., infra* pp. 7-12.

[13] Billings Decl. ¶ 10.

Wisconsin Actions were remanded from the District of Nevada to the Western District of Wisconsin. Accordingly, Plaintiffs again filed a motion for class certification. After voluminous briefing, this Court granted class certification on June 28, 2022.[14] That certification was appealed to the Seventh Circuit, and on August 5, 2025, the Seventh Circuit vacated the certification and remanded the case to this Court for further consideration of class certification consistent with the opinion.[15]

The parties have actively participated in extensive discovery for numerous years. Plaintiffs have submitted responses to hundreds of interrogatories, requests for production of documents and requests for admissions. Altogether, Wisconsin Class Counsel has reviewed and indexed well over one million documents. Defendants also produced more than 250,000 audio files, containing recorded conversations of their natural gas traders' telephone lines, recorded between January 1, 2000, and October 31, 2002, to which Wisconsin Class Counsel has listened. Wisconsin Class Counsel has responded to dozens of contention interrogatories in which they identified all evidence collected throughout discovery, including documents, audio tapes, deposition testimony and information in the public domain supporting their claims. Counsel have also traveled to and participated in many years of monthly status conferences and hearings before the MDL Court.[16]

The parties have prepared for and taken depositions and produced clients for depositions, for a total of more than 160 fact depositions[17] and 18 expert depositions.[18] Plaintiffs and Wisconsin

---

[14] ECF No. 268.

[15] ECF No. 319.

[16] Billings Decl. ¶ 12.

[17] Billings Decl. ¶ 13.

[18] Billings Decl. ¶ 14.

Class Counsel have a solid grasp of the factual and legal issues in each of these cases against all Defendants.[19]

While the Wisconsin Actions were pending, five companion cases reached settlement: *Texas-Ohio Energy, Inc. v. Centerpoint Energy, Inc., et al.*, CV-S-04-0465-PMP-PAL; *Fairhaven Power Co. v. EnCana Corp.*, CV-S-05-0243-PMP-PAL; *Abelman Art Glass Company v. EnCana Corp., et al.*, CV-S-05-0437-PMP-PAL; *Utility Savings & Refund Services, Inc. v. Reliant Energy Services, Inc., et al.*, CV-S-05-0110-PMP-LRL; and *Ever-Bloom, Inc., et al. v. AEP Energy Services, Inc., et al.*, CS-S-05-0808-MPM (collectively, the "California Class Actions").[20] In the first wave of the California settlements, the California class settled with four of the Defendants for $2.4 million, and with another Defendant for $700,000.[21] As in the Wisconsin Actions, the California Class Actions alleged antitrust violations against many of the same Defendants arising from manipulation of natural gas prices between January 1, 2000, and October 31, 2002.[22] The settlement results in those California cases were fractions of the favorable settlements that have thus far been reached in the Wisconsin Actions.

On May 3, 2007, the MDL Court found that the California Settlement Agreements "appear to be fair and reasonable" and warranted notice to the proposed class.[23] The MDL Court preliminarily approved the settlements, stating that "the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes in that: (a) there are hundreds of members of the class; (b) the claims of the class representatives are typical of those

---

[19] Billings Decl. ¶ 15.

[20] The claims in Wisconsin involve the same collusive price manipulation alleged in the California Class Actions.

[21] MDL Dkt. No. 492 (D. Nev. April 3, 2007).

[22] Order Preliminarily Approving Settlements, Certifying a Settlement Class, and Authorizing Dissemination of Notice, ECF No. 208-39.

[23] *Id.*

of the other members of the class; (c) there are questions of fact and law that are common to all members of the class; and (d) the class representatives will fairly and adequately protect the interests of the class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately represent the class."[24] The MDL Court also found that a class action was superior to other available methods, and that common questions of fact and law predominate over individual questions. On September 10, 2007, the MDL Court found that the settlement was fair and issued its final approval of the settlements.[25]

On February 9, 2017, the MDL Court preliminarily approved settlements in the Wisconsin Actions[26] with four Defendant groups.[27]  Ultimately, the MDL Court again found the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes in that:

- The settlement class was "so numerous that joinder of all members [wa]s impracticable";
- The claims brought against each Defendant by the Plaintiffs, "as industrial and commercial purchasers of natural gas for their own use and consumption during the Class Period, [we]re typical of the claims of, or defense to the claims of, members of the" class;
- The Plaintiffs' claims against the Defendants and the Defendants' defenses "thereto present[ed] questions of law or fact common to the" class;
- "Class Counsel" and the Plaintiffs, "[b]ased on their active participation in discovery and the settlement," both "fairly, adequately and vigorously represented the interest of the" class;
- "Questions of law or fact relating to whether" the Defendants "engaged in false or inaccurate reporting of natural gas transactions to the publishers of natural gas price indices, or . . . wash trading or churning transactions, in furtherance of a conspiracy

---

[24] *Id.*

[25] ECF No. 208-41.

[26] These settlements were part of a global settlement in 2016 between four of the Defendant groups and the Plaintiffs in the Wisconsin Actions, Kansas Action and Missouri Action. Since then, class settlements have been reached and approved by the MDL Court as to all remaining defendants in the Kansas, Colorado and Missouri Actions.

[27] ECF No. 208-44.

to manipulate prices for natural gas during the Class Period predominate over any questions affecting only individual members"; and

- No "more efficient alternative to the" class action existed; thus, the class method was "superior [ ] for the fair and efficient adjudication."[28]

On June 5, 2017, the MDL Court found that the settlement was fair and issued its final approval.[29]

On April 5, 2019, the MDL Court preliminarily approved settlements in the Wisconsin Actions with two additional Defendant groups.[30]  In its preliminary approval, the MDL Court again found the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement and that:

- the Wisconsin Class was "so numerous that joinder of all members is impracticable";

- the claims and defenses "present common questions of law or fact to the Wisconsin Class that predominate over questions affecting individual members of the Wisconsin Class";

- Plaintiffs' claims were typical of the claims of members of the Wisconsin class;

- Plaintiffs and Plaintiffs' counsel "fairly, adequately, and vigorously" represented the interest of the class; and

- Certifying the Wisconsin class was superior to other methods for adjudication of the controversy.[31]

On August 5, 2019, the MDL Court found that the settlements were fair and provided its final approval.[32] Again, the MDL Court found that a settlement class should be certified because Plaintiffs and Defendants agreed that the class was so numerous that joinder was impracticable; that the claims and defenses presented common questions of law or fact; Plaintiffs' claims were

---

[28] *Id.* at 3-4.

[29] ECF Nos. 208-17 to 208-20.

[30] MDL Dkt. No. 3127.

[31] *Id.* at 2-3.

[32] ECF Nos. 208-21 to 208-23.

typical of the claims of members of the Wisconsin class; that Plaintiffs and Plaintiffs' counsel fairly, adequately and vigorously represented the interest of the class; and that common issues related to Defendants' conspiracy to fix prices predominated.[33] As the MDL Court found: "[Q]uestions of law or fact relating to whether [the two Defendant Groups] engaged in false or inaccurate reporting of natural gas transactions to the publishers of natural gas price indexes, or engaged in other unlawful conduct including natural gas wash trading or churning transactions, in furtherance of a conspiracy to manipulate prices for natural gas during the Class Period predominate over any questions affecting only individual members of any of the Wisconsin Class."[34] The class method was therefore "superior" for the "fair and efficient adjudication of this controversy."[35]

On April 16, 2020, this Court preliminarily approved a settlement in the Wisconsin actions with yet another Defendant group (CMS). In its preliminary approval, this Court again found the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement because:

- the Wisconsin Class is "so numerous that joinder of all members is impracticable";

- the Plaintiffs' claims and the defenses raised "present questions of law or fact common to the Wisconsin Class that predominate over questions affecting individual members of the Wisconsin Class";

- the Plaintiffs' claims are "typical" of the claims of members of the Wisconsin class;

- Plaintiffs and Plaintiffs' counsel "fairly, adequately, and vigorously represented the interest of the Wisconsin Class"; and

---

[33] *See, e.g.*, ECF No. 208-21.

[34] *See, e.g.*, ECF No. 208-17 at 3-7.

[35] *Id.* at 4.

- Certifying the Wisconsin Class is "superior" to other methods for the fair and efficient adjudication of the Wisconsin Actions.[36]

On August 20, 2020, this Court certified the CMS class settlement, finding numerosity, common questions of law or fact, typicality, and fair, adequate and vigorous representation by Plaintiffs and Class Counsel of the interests of the Wisconsin Class.[37]

On March 7, 2023, this Court preliminarily approved a settlement in the Wisconsin actions with yet another Defendant group (Williams). As with the prior settlement approvals, the Court found the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement because:

- The numerosity requirement "is easily met";

- The Plaintiffs' claims and the defenses raised "present questions of law or fact common to the class";

- The Plaintiffs' claims are "typical" of the claims of members of the Wisconsin class;

- Plaintiffs and Plaintiffs' counsel "can capably litigate the case"; and

- Certifying the Wisconsin Class is "superior" to other methods for the fair and efficient adjudication of the Wisconsin Actions.[38]

On July 11, 2023, this Court certified the Williams class settlement, finding numerosity, common questions of law or fact, typicality, and fair, adequate and vigorous representation by Plaintiffs and Class Counsel of the interests of the Wisconsin Class.[39]

In summary, both the MDL Court and this Court have certified every settlement class presented to them, finding in each instance that all of the requirements of Rule 23(a) and (b)(3) are met. For the same reasons the MDL Court and this Court approved the settlements in the California

---

[36] *Id.* at 2-3.

[37] ECF No. 245.

[38] ECF No. 292.

[39] ECF No. 311.

Class Actions, and the prior Wisconsin settlements in this case with Duke, AEP, Coral, OneOk, El Paso, CenterPoint, CMS and Williams (as well as with all Defendants in Kansas, Colorado and Missouri), this Court should preliminarily approve the Dynegy and Xcel Settlements here.[40]

## II.    NATURE OF THE SETTLEMENT

Before entering into the Dynegy and Xcel Settlements, Wisconsin Class Counsel thoroughly evaluated the law and facts to assess the merits of Plaintiffs' claims as well as Dynegy and Xcel's defenses. Wisconsin Class Counsel has retained and consulted with experts concerning the facts discovered, the merits of the claims and defenses raised in this litigation and the recovery under Wisconsin's full consideration statute and its treble damages statute. Wisconsin Class Counsel considered the benefits to the Wisconsin Class to be obtained under the Dynegy and Xcel Settlement, as well as the expense, burdens and uncertainties associated with continuing litigation against Dynegy and Xcel.[41]

The Dynegy and Xcel Settlements were the product of intense, arms-length negotiations for years involving multiple experienced and informed counsel on both sides and multiple mediations and settlement meetings.

The Dynegy and Xcel Settlement requires the preliminary certification of a class of purchasers who purchased natural gas in Wisconsin between January 1, 2000, and October 31, 2002.[42] Pursuant to the terms of the Dynegy and Xcel Settlement, Dynegy will pay the Wisconsin Class $11.5 million, and Xcel will pay the Wisconsin Class $4.5 million.[43]

---

[40]   Although the MDL Court relied heavily on Ninth Circuit authority to support its certification of prior settlement classes, there is no significant difference between Seventh and Ninth Circuit law regarding the factors necessary to support certification of a settlement class in this case.

[41] Billings Decl. ¶ 16.

[42] *Id.*

[43] *Id.*

Upon the Dynegy and Xcel Settlements becoming final, Plaintiffs and Wisconsin Class Members will release any and all claims against Dynegy and Xcel relating to the subject matter of this lawsuit.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

"In the class action context in particular, 'there is an overriding public interest in favor of settlement.' Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."[44] Compromise is particularly favored in antitrust litigation, which is notoriously difficult and unpredictable.[45] It is well-established that horizontal price-fixing actions like this one are particularly appropriate for class certification and many courts have so held.[46]

A settlement class must meet the requirements of a typical Rule 23 analysis. Rule 23 provides that a court should certify a class where, as here, the Plaintiffs satisfy the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), and one of the three criteria set forth in Rule 23(b).[47] Plaintiffs here satisfy all requirements of Rule 23(a) and satisfy Rule 23(b)(3), which provides that "[a] class action may be maintained" if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating  the controversy." Lastly, Rule 23(e) requires the

---

[44] *Armstrong v. Bd. Of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980).

[45] *See In re Linerboard Antitrust Litig*., 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002).

[46] *See, e.g.*, *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016)*; In re Sugar Antitrust Litig*., 559 F.2d 481, 483 (9th Cir. 1977) (noting "there is almost a rebuttable presumption that such a class action should be allowed where there is a plausible claim of violation of the Sherman Act" (citation omitted)).

[47] *Amchem*, 521 U.S. at 614.

court to evaluate the entire settlement at a hearing for final approval and determine its overall

fairness, adequacy and reasonableness.

Final approval of settlements under Rule 23(e) may be granted only after a fairness hearing

and a determination that the settlement taken as a whole is fair, reasonable and adequate.[48] While

the inquiry in different cases may vary, in the Seventh Circuit, courts must consider:

> the strength of plaintiffs' case compared to the amount of defendants' settlement
> offer, an assessment of the likely complexity, length and expense of the litigation,
> an evaluation of the amount of opposition to settlement among affected parties, the
> opinion of competent counsel, and the stage of the proceedings and the amount of
> discovery completed at the time of settlement.[49]

At this preliminary stage, a full fairness hearing is not necessary. That is because, under

Rule 23(e):

> District court review of a class action settlement proposal is a two-step process. The
> first step is a preliminary, pre-notification hearing to determine whether the
> proposed settlement is within the range of possible approval. This hearing is not a
> fairness hearing; its purpose, rather, is to ascertain whether there is any reason to
> notify the class members of the proposed settlement and to proceed with a fairness
> hearing.[50]

Here, the settlement is clearly within the range of possible approval based on the applicable

factors.  No actual hearing is required at the preliminary approval stage (the motion may be decided

on briefs),[51] and the Court should grant preliminary approval of the Dynegy and Xcel Settlements.

---

[48] *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

[49] *Id.*

[50] *Armstrong*, 616 F.2d at 314 (7th Cir. 1980).

[51] *See, e.g.*, *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-CV-01508-JCM-VCF, 2012 WL 3277278, at *4 (D. Nev.
July 18, 2012) (citing Manual for Complex Litigation § 13.14 (4th ed. 2008)).

### A.     The Requirements of Rule 23(a) Are Satisfied in This Case

### 1.     The Wisconsin Class Is So Numerous That Joinder of All Members Is Impracticable

The first requirement for class certification is that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not allege the precise number or identity of class members.[52] Indeed, courts may make common-sense assumptions to support a finding that joinder would be impracticable.[53] Courts have generally found that the numerosity requirement is satisfied when there are more than forty class members.[54]

The Wisconsin Class includes all commercial and industrial consumers who were purchasers of natural gas in Wisconsin between January 1, 2000, and October 31, 2002. In an effort to obtain an estimate of the number of potential class members, Plaintiffs have looked to the United States Energy Information Agency ("EIA"). That Agency reported that between 2000 and 2002, Wisconsin had thousands of industrial and commercial purchasers.[55] The proposed Settlement Class thus readily satisfies the numerosity requirement.

### 2.     This Case Involves Many Questions of Law and Fact Common to the Wisconsin Class

The second requirement for class certification is that class members share common issues of law or fact. Fed. R. Civ. P. 23(a)(2). A plaintiff must establish that the class members' claims "depend upon a common contention of such a nature that it is capable of classwide resolution –

---

[52] *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 778 (7th Cir. 2021); *see also Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008) (plaintiff provided names of 14 potential class members and evidence supported "a much larger estimate").

[53] *Arreola*, 546 F.3d at 798; *see also* 1 *Newberg on Class Actions*, § 3:13 (5th ed. 2019) ("Generally, a plaintiff must show enough evidence of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members.").

[54] *Newberg*, *supra*, § 3.12.

[55] Billings Decl. ¶ 19.

which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[56] "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."[57] Only one significant common issue is necessary to satisfy commonality.[58] Commonality is easily met in antitrust class action suits because evidence about defendants' conduct relates to the entire class.[59]

Allegations of a price-fixing conspiracy are generally held to satisfy commonality, as "the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."[60] In considering price-fixing cases like this one, courts typically[61] look to three primary common issues: (1) a violation of the antitrust laws; (2) harm or injury resulting; and (3) the methodology for determining damages or other allowable recovery.[62]

Each of these elements is subject to common proof in this case. Plaintiffs have alleged and provided substantial evidence that Defendants participated in a nationwide price manipulation conspiracy that resulted in increased prices for natural gas being sold across the country.[63] There can be no genuine dispute that the issue of whether Defendants participated in the alleged arrangement can be proven using evidence common to all Plaintiffs. The evidence of Defendants'

---

[56] *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).

[57] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see also Red Barn Motors, Inc. v. NextGear Capital, Inc.*, 915 F.3d 1098, 1102 (7th Cir. 2019).

[58] *Id.*; *Wal-Mart*, 564 U.S. at 359.

[59] *See, e.g.*, *Kleen Prods.*, 831 F.3d at 925 (Sherman Act); *Kainz v. Anheuser-Busch, Inc.*, 194 F.2d 737 (7th Cir. 1952) (Clayton Act).

[60] *In re Dynamic Random Access Memory* (*DRAM*) *Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("*DRAM*") (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005) ("*Rubber Chems.*")).

[61] *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008), *aff'd*, 768 F.3d 1245 (10th Cir. 2014).

[62] This is explained in further detail in Plaintiffs' Brief in Support of Class Certification.

[63] Billings Decl. ¶ 20; *see also* Plaintiffs' Brief in Support of Class Certification (Feb. 14, 2020), ECF No. 208.

combination or conspiracy will not vary from plaintiff to plaintiff, and class members will succeed or fail together in proving this issue. Likewise, because Defendants (exploiting the integrated and homogenous U.S. natural gas market) allegedly manipulated the price indices that formed the basis for the inflated prices each class member ultimately paid for natural gas, the method of calculating impact is common to all Class Members.[64] Lastly, as described by Drs. Harris and Dwyer (Plaintiffs' certification experts in these cases, both of whom have already survived Defendants' *Daubert* motions), the methodology for establishing damages relies on proof common to all Plaintiffs.[65] Plaintiffs' claims plainly satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2).[66]

### 3.    Plaintiffs' Claims Are Typical of the Wisconsin Class's Claims

The third requirement for maintaining a class action is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that "there [ ] be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group."[67] Plaintiffs satisfy the typicality requirement.

Courts do not require perfect congruence. "A class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory."[68] [T]he typicality inquiry

---

[64] Harris Decl. to Motion for Class Certification, ECF No. 208-12, ¶¶ 44-56.

[65] *Id.* ¶¶ 72-76; Dwyer Decl. to Motion for Class Certification, ECF No. 208-13, ¶ 18. The full consideration is even simpler and can be established by the common methodology of totaling the amounts each class member paid for natural gas. *See* Plaintiffs' Brief in Support of Class Certification (ECF No. 208) at 37.

[66] August 2020 Order at 3.

[67] *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (discussing *Gen. Tele. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)).

[68] *McFields v. Dart*, 982 F.3d 511, 517 (7th Cir. 2020) (internal quotation marks and citation omitted).

"primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."[69]

In a price-fixing case, typicality exists even if the plaintiffs purchased a product at different prices in different ways. *Kleen Products* is instructive. In *Kleen Products*, it was sufficient for plaintiffs to assert "that every person or entity in North America paid the overcharges on containerboard that resulted from Defendants' collusive practices." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 928-29 (7th Cir. 2016). "Even for transactions where prices were negotiated individually or a longer term contract existed, the district court found, reasonably, that the 'starting point for those negotiations would be higher if the market price for the product was artificially inflated.'"[70] Courts have generally found the typicality requirement to be satisfied in cases involving horizontal price-fixing conspiracies.[71]

This price-fixing case easily meets the typicality requirement. Here, the claims of the named Plaintiffs and the class members arise from the same illegal course of conduct engaged in by the Defendants in the same, highly-integrated and interdependent natural gas market, and the

---

[69] *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)).

[70] *Id.* at 929; *see also In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 (W.D. Pa. 1999).

[71] *See In re Ready-Mixed Concrete Antitrust Litig.,* 261 F.R.D. 154, 168 (S.D. Ind. 2009) (typicality requirement met because the plaintiffs' claims and those of the purported class "are based on the same antitrust theory and arise from the same allegations of conspiracy."); *In re Rubber Chems.*, 232 F.R.D. at 351 (typicality "will be established by plaintiffs and all class members alleging the same antitrust violations by defendants" (citations omitted)); *In re Citric Acid Antitrust Litig.*, No. 95-1092. C-95-2963 FMS, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996) ("The alleged underlying course of conduct in this case is defendants' conspiracy to fix the price of citric acid and to allocate customers among themselves . . . . The legal theory that plaintiffs rely on is antitrust liability. Because plaintiffs and all class members share these claims and this theory, the representatives' claims are typical of all"); *Estate of Garrison v. Warner Bros., Inc.*, No. 95-8328 RMT, 1996 WL 407849, at *2 (C.D. Cal. June 25, 1996) ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants" (citation omitted)).

claims of the named Plaintiffs and the class members are the same (civil actions pursuant to Wis. Stat. § 133.03, giving rise to remedies under § 133.14 for full consideration and for treble damages under § 133.18).[72] As such, the named Plaintiffs' claims are identical to those of the class and are necessarily typical of those of the class. Thus, Plaintiffs satisfy the typicality requirement of Fed. R. Civ. P. 23.

### 4.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Wisconsin Class

The fourth requirement mandates that the Plaintiffs fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."[73] Plaintiffs satisfy Rule 23(a)(4). As this Court and the MDL Court found for each of the prior settlements, those criteria are satisfied here.[74]

### a.     Adequacy of Representation

Establishing that the representation of the class is adequate requires that (1) the named plaintiffs and their counsel have no conflicts of interest with other class members,[75] and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.[76] Both the named Plaintiffs and Wisconsin Class Counsel here understand their obligations to

---

[72] *See Kleen Prods.*, 831 F.3d at 928-29; *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983).

[73] *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

[74] ECF No. 208-17 at 3-4; ECF No. 208-21 at 4-5.

[75] *Amchem Prods. Inc.*, 521 U.S. at 626.

[76] *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *4 (N.D. Cal. Sept. 29, 2008); *Copeland v. Wabash Cnty., Indiana*, 338 F.R.D. 595, 605 (N.D. Ind. 2021).

Wisconsin Class members, have prosecuted these cases diligently for 19 years and will continue to fulfill those obligations without outside conflict.[77]

Second, in determining the adequacy of representation, Plaintiffs must show that Class Members will receive vigorous and skilled representation by Plaintiffs, the potential class representatives. Plaintiffs have exhibited such willingness for nearly 19 years and will continue to do so. All Plaintiffs accept and are ready to carry out their responsibilities to the class members, as they have ably done in achieving prior class settlements of nearly $77 million.[78]

Plaintiffs have retained skilled counsel with extensive experience in prosecuting antitrust class actions. Wisconsin Class Counsel have over the last 19 years successfully prosecuted these claims on behalf of all of the Wisconsin Class Members. Kohner Mann & Kailas, S.C., Perkins Coie LLP and Polsinelli PC have vigorously pursued the litigation on behalf of Plaintiffs and the proposed Wisconsin Class. With the Dynegy and Xcel Settlements, Plaintiffs will have secured total settlements so far of approximately $92 million for the Wisconsin Class.  They have devoted the substantial time, resources, and leadership necessary to prosecute this action.   Plaintiffs therefore satisfy the adequacy requirement of Rule 23(a)(4).[79]

### b.    Fairness of Representation

The Dynegy and Xcel Settlements do not provide that Wisconsin Class Counsel will receive a disproportionate amount of the settlement consideration. Rather, it specifies that the Court will determine the amount of attorneys' fees and expenses, and that determination shall have

---

[77] *See* Billings Decl. ¶ 24; *see also* the following Declarations accompanying Plaintiffs' February 14, 2020 Motion for Class Certification:  Greathouse Decl. ¶ 9 (ECF No. 208-26); Mourand Decl. ¶ 8 (ECF No. 208-27); Morris Decl. ¶ 10 (ECF No. 208-28); Treis Decl. ¶ 7 (ECF No. 208-29); Wisnefske Decl. ¶ 6 (ECF No. 208-31); Hoare Decl. ¶¶ 7-8 (ECF No. 208-31); Krolikowski Decl. ¶¶ 8-9 (ECF No. 208-32.)

[78] *See id.*

[79] ECF No. 314, at 4.

no bearing on the settlement. Further, the Dynegy and Xcel Settlements contain no "clear sailing" provision providing for the payment of attorneys' fees separate and apart from class funds. Lastly, the Dynegy and Xcel Settlements do not allow any part of the consideration to revert to Dynegy and Xcel unless the entire settlement were to terminate for any reason.[80] The absence of these concerns is a further indication of the Settlement's fairness.[81]

Although awards of attorneys' fees and expenses are not determined until the settlement becomes final, fairness dictates consideration of those issues at this point because the amount of expenses awarded will reduce the amount payable to the class. The contingency fee agreements[82] entered into between Wisconsin Class Counsel and Plaintiffs provide for reimbursement of actual expenses incurred to date as a first step in settlement distribution. Counsel seeks to recover their unreimbursed expenses through Final Approval.[83] Expenses, as with those earlier approved by this Court and the MDL Court, include such things as service of subpoenas, stenographic and videotaped depositions, electronic discovery data management, service vendors, expert witnesses, local counsel and reasonable travel expenses. The expenses are not expected to exceed $500,000.[84]

The fees sought adopt the same fee terms already approved by this Court and the MDL Court for the earlier class settlements.[85]  The contingency fee agreements between Wisconsin Class Counsel and Plaintiffs specify a contingent legal fee to be paid to class counsel of 35% *after* deduction of expenses.[86] If the Court approves the same 35% net fee recovery approved by the

---

[80] Billings Decl., Exhibit 2.

[81] S*ee McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009).

[82] Billings Decl., Exhibit 3.

[83] Billings Decl. ¶ 35.

[84] *See* Billings Decl. ¶ 35; Hanewicz Decl. ¶ 14; Jones Decl. ¶ 12.

[85] *See, e.g.*, ECF No. 208-24.

[86] Billings Decl., Exhibit 3.

MDL and this Court in prior settlements, Wisconsin Counsel will receive a net fee recovery of approximately one-third (33.7%) of all gross recoveries to date.[87]  In total, all class counsel have in the course of 19 years invested nearly $50 million in legal work in the Wisconsin Actions.[88] Wisconsin Class Counsel have fully borne the risk of these investments: both the fees and the expenses are wholly contingent, so if the Wisconsin Class were to collect nothing, Wisconsin Class Counsel would be paid nothing. None of these substantial expenses or fees has been fronted or paid by Plaintiffs, and none will be owed outside of any settlement or verdict.

With regard to fees for Wisconsin Class Counsel:

There are several approaches to determining the hypothetical market price of attorneys fees in common fund class action cases, the most common being the percentage of fund and the lodestar approaches. … The differences between the two methods (percentage and lodestar) have largely been reconciled in common fund cases because, in actual practice, courts have essentially concluded that proper use of both methods should lead to a fee of similar size.[89]

Further, "[t]he Seventh Circuit recognizes that there are advantages to utilizing the percentage of fund method in common fund cases including its relative objectivity and the fact that it is easily administered."[90] Here, the proposed range is not only amply supported by the lodestar approach, but also falls within the normal percentage range of common fund attorney fee awards approved by courts, including by the MDL Court in all its approvals of past settlements reached with Defendants.[91]

---

[87] Billings Decl. ¶ 34.

[88] Billings Decl. ¶ 36; Hanewicz Dec. ¶ 15; Jones Decl. ¶ 13; Barry 4/24/17 Decl. (MDL Dkt. No. 2868-5) ¶ 4.

[89] *Great Neck*, 212 F.R.D. at 411.

[90] *Id*.

[91] *McKinnie*, 678 F. Supp. 2d at 816 (citing 4 *Newberg on Class Actions* § 14:6, p. 558 (4th ed. 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement.)); *see also In re Broiler Chicken Antitrust Litigation*, No. 16 C 8637, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021) (noting "the large number of antitrust cases in [the Seventh Circuit] that have awarded one-third of the common fund as attorneys' fees.").

Where the named plaintiffs, as here, are sophisticated businesses, the "actual agreements" between plaintiffs and attorneys are also an important consideration for determining fee awards.[92] In this instance, per the Contingency Fee Agreements negotiated by the plaintiff representatives, the contingency fee agreement of 35% is being applied to the *net* recovery *after* expenses. Because these parties seek 35% *after* expenses, the total fee amount is roughly one-third of the gross settlement amounts before expenses. Thus the 35% of net (post-expense) recovery is within the gross (pre-expense) recovery range typical in common fund class actions. The unusual and burdensome circumstances of these cases—especially the decade that Wisconsin Class Counsel worked without payment before the first settlement—and continuing work on claims against remaining defendants, warrant the exercise of the Court's discretion to award the 35% net fee provided for in the Contingency Fee Agreements.[93]

In a "percentage of the funds" case, the determination of the fairness and reasonableness of a requested percentage fee should utilize the following factors: "the contingent nature of the case, the quality of services rendered, the benefits derived by the class, ... the public service aspects of the case... and how far the litigation proceeded prior to settlement."[94] Consideration of these factors supports granting preliminary approval to the Dynegy and Xcel Settlements.

**(i) The contingent nature of the fee and the financial burden.** As the Wisconsin contingency fee agreements provide,[95] all fees and expenses in this litigation are fronted by Class Counsel and any reimbursement is contingent upon the Wisconsin Class Members receiving recoveries in this litigation. Counsel have invested nearly $50 million in legal time, and have

---

[92] *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719-20 (7th Cir. 2001).

[93] ECF 244.

[94] *Great Neck*, 212 F.R.D. at 411

[95] Billings Decl., Exhibit 3.

advanced almost $3.5 million in expenses and costs for these cases over nearly 19 years, with no assurance of reimbursement.[96]

      **(ii) The skill required the quality of work performed.**  The second factor, skill required and quality of the work performed, are both apparent when comparing the complexity of this litigation to the many favorable results obtained.  The massive amount of motion practice and discovery completed, and the dozens of hearings before the MDL Court, along with the successful results on the legal issues at every level of the federal courts, could not have been accomplished without Counsel's commitment and expertise in both antitrust law and in class actions.

      **(iii) The benefit derived by the class.** This Settlement provides a significant recovery for the class members—more than $10 million will be distributed.

      **(v) The public service aspects of the case.**  The Supreme Court has long recognized that antitrust class actions are a vital component of antitrust enforcement.[97]  This litigation provides a public benefit, as private antitrust suits are "a mechanism for holding corporations accountable for wrongdoing."[98]  The benefits to individuals, businesses and institutions in the State of Wisconsin made possible by recoveries from Defendants are profound.

---

[96] *See* Billings Decl. ¶¶ 35-36; Hanewicz Decl. ¶ 14-15; Jones Decl. ¶ 12-13; Barry 4/24/17 Decl. (MDL Dkt. No. 2868-5) ¶ 4.

[97] *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("These private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations."); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972) ("Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation." (internal citation omitted)); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969) ("the purpose of giving private parties treble-damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws").

[98] *Great Neck*, 212 F.R.D. at 412; *see also* B. Fitzpatrick, *The Conservative Case for Class Actions* 3 (Nov. 2019 ed) ("[C]lass action lawsuits are not only the most effective way to hold corporations accountable; they are also the most conservative way to hold them accountable. …[T]hat's exactly why we should like class action lawsuits; they are privatized enforcement of the law.") (emphasis in original).

**(vi) How far the litigation proceeded prior to settlement.** As set out above, these cases have been proceeding for 19 years, with copious amounts of discovery, unprecedented motion practice, numerous appeals, including to the United States Supreme Court and numerous mediations and negotiations.[99] The protracted history of these cases supports the requested fee award.

In addition to the above factors, courts also consider administrative fees in evaluating fairness. Wisconsin Class Counsel has investigated entities experienced in handling the administration of class actions. Based on that analysis, Counsel recommends that AB Data, Ltd. ("AB Data"), serve as class administrator. AB Data administered various prior settlements in the MDL (having been approved by the MDL Court) and in this Court in connection with the Wisconsin Class settlement with the CMS Defendants in 2020 and Williams Defendants in 2023, and will provide consistency in conducting activities that will include: disseminating long and short form notices, managing the settlement website, staffing dedicated informational telephone lines, communicating with potential class members, documenting opt-outs, objections and correspondence. Based upon discussions to date and limiting the administration to the activities described, Plaintiffs recommend the retention of AB Data. Plaintiffs seek an allowance for administrative fees not to exceed $100,000.[100] With a class consisting of thousands of potential class members, an administrative fee of $100,000 is reasonable.

Lastly, the Court must consider the propriety and amount of potential service awards to individual class representatives. The entities that have served as Named Plaintiffs have participated in this litigation for nearly 19 years. In addition to monitoring the litigation, they have been actively

---

[99] Billings Decl. ¶ 33.

[100] Billings Decl. ¶ 25.

involved in discovery, including locating decades-old records, responding with (in some cases, massive amounts of) information, giving depositions and attending and actively participating across the country in mediations, settlement discussions and court hearings. Neither the contingency fee agreements nor the Dynegy and Xcel Settlement Agreements set a specific dollar amount or a percentage amount for service awards.

The Wisconsin Class has seven named Plaintiffs:  Arandell Corporation ("Arandell"), Briggs & Stratton Corporation ("Briggs"), Carthage College ("Carthage"), ATI Ladish LLC (f/k/a Ladish Co., Inc.) ("Ladish"), Merrick's, Inc., ("Merrick's"), Billerud Wisconsin LLC (f/k/a Verso Minnesota Wisconsin LLC, f/k/a NewPage Wisconsin System Inc.) ("NewPage"), and Sargento Foods, Inc. ("Sargento").[101]  Based upon the exceptional work they have performed and the expanse of years during which such work has occurred, Plaintiffs request that this Court grant a service award to each particular Plaintiff in such amount as this Court later deems appropriate, in accordance with a subsequent motion to be filed at the time of final approval for their extraordinary service on behalf of the Wisconsin class members through 19 years of this litigation.[102]

### B.    The Requirements of Rule 23(b)(3) Are Satisfied in this Case

To be certified under Rule 23(b)(3) a class must meet two additional requirements: "[c]ommon questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy."[103] As noted by the Supreme Court: "[p]redominance is a test readily met in certain cases alleging ... violations of the antitrust laws."[104]

---

[101] Billings Decl. ¶ 26.

[102] Billings Decl. ¶ 27.

[103] *Amchem*, 521 U.S. at 615 (internal quotation marks omitted).

[104] *Id.* at 625.

### 1.    Common Questions of Law and Fact Predominate Over Individual Questions

Courts commonly find the "predominance" requirement of Rule 23(b) satisfied in horizontal price-fixing cases.[105] Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof. What the rule does require is that common questions *predominate* over any questions affecting only individual class members."[106] The focus of the predominance inquiry is whether the proposed Wisconsin Class is "sufficiently cohesive to warrant adjudication by representation."[107]

> Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." Or, to put it another way, common questions can predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. . . . Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.[108]

Here, common issues predominate with respect to Plaintiffs' proof of three critical matters: (1) that Defendants participated in a conspiracy or arrangement to fix prices in violation of the Wisconsin antitrust laws; (2) that Wisconsin Class Members suffered antitrust injury (*i.e.*, "impact") as a result of the conspiracy; and (3) the basis for recovery (full consideration or treble damages) to which they are entitled.[109] Plaintiffs will establish each of the above elements through

---

[105] *See, e.g.*, *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 814-15 (7th Cir. 2012); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 300 (3d Cir. 2011); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,* 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." (internal quotation marks omitted)).

[106] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 US 455, 469 (2013) (internal quotation marks, citation, and brackets omitted) (emphasis in original).

[107] *Id.* (quoting *Amchem*, 521 U.S. at 623).

[108] *Messner*, 669 F.3d at 815 (internal citations omitted).

[109] *See In re TFT-LCD (Flat Panel) Antitrust Litig.* , 267 F.R.D. 291, 310 (N.D. Cal. 2010); *DRAM,* 2006 WL 1530166, at *7. This element is applicable to the treble damages claims.

"generalized proof" applicable to the Wisconsin Class as a whole, all of whom operated in the same integrated market.[110]

> ### 2.     A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Case Where No Other Practicable Remedy Exists

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." If common questions are found to predominate in an antitrust action, courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied.[111]

Here, as the MDL Court and this Court repeatedly found in approving prior settlements, it would be incredibly inefficient to litigate the predominating common issues in thousands of individual proceedings.[112] In these cases, the prosecution of this number of individual claims would be nearly impossible. The prosecution of separate actions would also threaten inconsistent rulings and prejudice individual plaintiffs. Most critically, "[i]n antitrust cases such as this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress."[113] Hundreds

---

[110] *See* ECF No. 208 at 34-45.

[111] *TFT-LCD*, 267 F.R.D. at 298.

[112] *See, e.g.*, MDL Dkt. Nos. 2902, 3152; *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013); *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) ("In light of the great costs of discovery and trial, class certification is particularly important where many small and medium sized claimants are involved who would not otherwise be able to secure relief.") (citing *Alexander v. Q.T.S. Corp.*, No. 98 C 3234, 1999 WL 573358, at *13 (N.D. Ill. July 30, 1999)). "Ultimately, the court must decide whether classwide resolution would substantially advance the case." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761 (7th Cir. 2014).

[113] *SRAM*, 2008 WL 4447592, at *7.

of Wisconsin Class Members would be effectively foreclosed from pursuing their claims absent class certification.[114]

### C.     The Court Should Appoint Settlement Class Counsel

Rule 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court must consider:  [i] the work counsel has done in identifying or investigating potential claims in the action; [ii] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [iii] counsel's knowledge of the applicable law; and [iv] the resources counsel will commit to representing the class."

Wisconsin Class Counsel ask that Kohner Mann & Kailas, S.C., Perkins Coie LLP and Polsinelli PC be appointed as Settlement Class Counsel. The four factors set out in Rule 23(g)(1)(A) are readily met here. As set out in section I *supra*, the Kohner, Perkins and Polsinelli firms have engaged in substantial discovery and motion practice over the last 19 years to bring this case to a point where it is ready for trial, meeting the first factor, "the work counsel has done in identifying or investigating the potential claims in this action." The second factor, "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" is clear not only from the years of prosecution of this action and meaningful settlements obtained to date, but also from the years of experience of the counsel involved.[115] Third, "counsel's knowledge of applicable law," is evident in the motion practice before multiple circuit and appellate courts and the United States Supreme Court.  Finally, "the resources that

---

[114] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338 ("[M]any claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs.").

[115] See Billings Decl. ¶¶ 33-36; Hanewicz Decl. ¶¶ 12-15; Jones Decl. ¶¶ 6-7.

counsel will commit to representing the action" is apparent in the nearly $3.5 million that counsel has already advanced.

These firms have already been appointed by the MDL and this Court in the eight prior class settlements involving Wisconsin, and all three firms are willing and able to continue to prosecute the Wisconsin Actions and to devote all necessary resources to obtain the best possible result for the class with this final settlement.[116] The work done and funds expended to date support a determination that these firms should be appointed as Wisconsin Class Counsel for purposes of the Settlements.[117] The firms amply meet the standards set forth in Rule 23(g)(1)(A).

### D.     Rule 23(e) Fairness, Reasonableness and Adequacy Hearing

Following the preliminary approval of the proposed Dynegy and Xcel Settlements, issuance of notice and other procedural steps, a final hearing needs to be held to approve the final settlements, pursuant to Fed. R. Civ. P. 23(e). It is at this final hearing that the Court will examine the overall fairness of the settlement.[118]

## IV.     PROPOSED PLAN OF SETTLEMENT

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Under Rule 23(c)(2)(b), class members are entitled to the "best notice practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. The notice must state in plain, easily understood language:

- the nature of the action;

- the definition of the class certified;

---

[116] *See* Billings Decl. ¶¶ 32-33; Hanewicz Decl. ¶¶ 14-17; Jones Decl. ¶ 7.

[117] *See, e.g., Harrington v. City of Albuquerque,* 222 F.R.D. 505, 520 (D.N.M. 2004).

[118] *Armstrong*, 616 F.2d at 314.

- the class claims, issues, or defenses;

- that a class member may enter an appearance through counsel if the member so desires;

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.* Notice to the class must include "individual notice to all members who can be identified through reasonable effort."[119]

Utilizing the same protocol approved by the MDL Court and this Court in prior settlements, Plaintiffs propose that a long form notice in the form attached as Exhibit 4 to the Billings Declaration be furnished to each Wisconsin Class Member who may, using reasonable efforts, be identified. Plaintiffs were able to identify significant numbers of potential Wisconsin Class Members for earlier settlements by, *inter alia*, references to customer information produced by Defendants, documents and information produced by local natural gas distribution companies, and nitrogen oxide emissions reports filed with the EPA and EIA, which identify those entities that burn natural gas.[120] Plaintiffs have further refined this list through the claims process employed in the prior MDL settlements.

In addition, as further described in the Declaration of Brian Devery, Plaintiffs propose that a short form notice in the form attached as Exhibit 5 to the Billings Declaration be published in major newspapers of general circulation in Wisconsin, and that both notices, along with the Settlement Agreement, be posted on a website accessible to Wisconsin Class Members.[121]

---

[119] *Amchem*, 521 U.S. at 617.

[120] Billings Decl. ¶ 28.

[121] Billings Decl. ¶ 29; Devery Decl. ¶¶ 8, 11-13.

Publication notice is an acceptable method of providing notice where the identity of some class members is not reasonably available.[122]

The content of the proposed notices complies with the requirements of Rule 23(c)(2)(B). The long form notice clearly and concisely explains the nature of the action and the terms of the Settlements.[123] It provides a clear description of who is a member of the Wisconsin Class and the binding effects of Wisconsin Class membership.[124] It explains how to exclude oneself from the Wisconsin Class, how to object to the Settlements, how to obtain copies of papers filed in the case and how to contact Wisconsin Class counsel.[125]

The short form notice also identifies Wisconsin Class Members, explains the basic terms of the Dynegy and Xcel Settlements and discloses the consequences of Wisconsin Class membership.[126] It also explains how to obtain more information about the Dynegy and Xcel Settlements.[127] The short form notice will be published after the long form notices are mailed and e-mailed to known potential Wisconsin Class Members.[128]

Such notice plans are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members as well as the best notice practicable under the circumstances.[129] Similar notice plans have been approved recently in the Western District of

---

[122] *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004).

[123] Billings Decl., Exhibit 4.

[124] *Id.*

[125] *Id.*

[126] Billings Decl., Exhibit 5.

[127] *Id.*

[128] Billings Decl. ¶ 30.

[129] *See Moore's Federal Practice* §§ 23.63[8][a], 23.63[8][b] (3d ed. 2003).

Wisconsin and were approved and utilized in this Court in 2022 (involving the CMS Defendants) and in prior class settlements in this MDL.[130]

Because the content of the notice fulfills the requirements of Rule 23 and due process, the Court should preliminarily approve the notices. As noted above, Plaintiffs' Counsel recommends the retention of AB Data as settlement administrator, the same administrator who administered prior settlements in this Court and the MDL.

## V.     PROPOSED PLAN OF ALLOCATION

As done in all earlier Wisconsin settlements, Plaintiffs propose that settlement funds be allocated on a *pro rata* basis within the Wisconsin Class based on the volume of each claiming class member's purchase(s) of natural gas in proportion to the total volume filed by all members in the Wisconsin Class. In determining the *pro rata* allocation of settlement funds, claiming Class Members' purchases will be valued according to the proportionate volume of natural gas purchased. The resulting percentages will be multiplied against the net settlement fund for the Wisconsin Class (total settlements minus all expenses, attorneys' fees and incentive awards) to determine each electing claimant's *pro rata* share of the Settlement fund.[131]

## VI.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear evidence and argument necessary to evaluate the proposed Dynegy and Xcel Settlements. At that hearing, members of the Class, or their counsel, may be heard in support of or in opposition to the Dynegy and Xcel Settlements.

Plaintiffs propose the following schedule:

---

[130] *See, e.g.*, *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, No. 3:10-CV-00426-wmc, 2014 WL 12725371, at *3 (W.D. Wis. Sept. 17, 2014); MDL ECF No. 2795; ECF No. 228; ECF No. 292.

[131] Billings Decl. ¶ 31.

| Date | Event |
|------|-------|
| <u>75 days before Final Fairness Hearing</u> | Long form notice, along with required claim form, sent to class members by U.S. mail or electronic mail, publication of website, and activation of telephone information system; short form notice published in the newspapers of general circulation in Wisconsin; and copy of the class notice, settlement agreement and claim form posted on the internet website www.naturalgasantitrustsettlement.com. |
| <u>30 days before Final Fairness Hearing</u> | Deadlines to object to the settlement, and/or file a notice of intention to appear at the fairness hearing. |
| <u>25 days before Final Fairness Hearing</u> | Deadline for Class Counsel to provide Dynegy and Xcel, and for Dynegy and Xcel to provide Class Counsel, PDF copies of all objections received. |
| <u>21 days before Final Fairness Hearing</u> | Deadline to request exclusion from the class. Deadline for filing motion for final approval of settlement and applications for attorneys' fees. |
| <u>16 days before Final Fairness Hearing</u> | Deadline for Class Counsel to provide Xcel's and Dynegy's counsel the list of all entities that have timely requested exclusion from the settlement classes. |
| <u>105 days after filing of this Motion</u> | Hearing on final approval of settlement. |

If preliminary approval is granted, the proposed Wisconsin Class members will be notified of the terms of the Dynegy and Xcel Settlements and informed of their rights in connection therewith, including their right to appear and be heard at the hearing.

## CONCLUSION

For the foregoing reasons, and in the interests of justice, Plaintiffs respectfully ask the Court to enter an order:

(i)    Granting expedited consideration of this motion, including scheduling a final

fairness hearing at the earliest date that is 105 days or more after the date of this

filing, at which the Court will consider: (a) whether to grant final approval of the Dynegy and Xcel Settlements; (b) class counsel's applications for attorneys' fees and costs; and (c) any request for service awards to individual Class Plaintiffs.

(ii)     Granting preliminary approval of the Class Action Settlement Agreement that Plaintiffs and Dynegy and Xcel have signed;

(iii)    Preliminarily certifying the Dynegy and Xcel Settlement Class for the Wisconsin Class (*Arandell* and *NewPage);*

(iv)     Appointing Arandell Corporation, Briggs & Stratton Corporation, Carthage College, Ladish Co., Inc. (n/k/a ATI Ladish LLC), Merrick's, Inc., Billerud Wisconsin LLC (f/k/a NewPage Wisconsin System Inc., f/k/a, Verso Minnesota Wisconsin LLC), and Sargento Foods, Inc., as Wisconsin Class Plaintiffs for the Wisconsin Settlement Class;

(v)      Appointing Kohner Mann & Kailas, S.C., Perkins Coie LLP, and Polsinelli PC as Settlement Counsel;

(vi)     Approving the manner and form of giving notice of the Dynegy and Xcel Settlements to class members;

(vii)    Establishing the timetable outlined above for publishing class notice and lodging objections to the terms of the Dynegy and Xcel Settlement;

(viii)   Approving the procedures outlined above for Wisconsin Class Members to exclude themselves from the Dynegy and Xcel Settlement Class and object to the Xcel Settlements;

(ix)     Appointing AB Data as the settlement administrator to conduct the duties assigned to that position in the Dynegy and Xcel Settlements;

36

(x)    Staying all non-settlement proceedings in the Wisconsin Actions against Dynegy

and Xcel pending final approval of the Dynegy and Xcel Settlement; and

(xi)    Providing such other and further relief as the Court deems just and proper.

Dated: November 5, 2025

s/ Ryan M. Billings
Ryan M. Billings
Melinda A. Bialzik
Lance E. Duroni
KOHNER, MANN & KAILAS, S.C.
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212
Telephone:(414) 962-5110
Facsimile: (414) 962-8725

Christopher G. Hanewicz
Autumn N. Nero
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

and

Russell S. Jones, Jr.
Andrew J. Ennis
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536

*Counsel for Plaintiffs Arandell Corp., et al, and
NewPage Wisconsin System, Inc.*